JOHN WILLIAM ROUSU *vs.* THE COLLINS COMPANY ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 22d—decided December 8th, 1931.

*George H. Day,* with whom, on the brief, was *Arthur L. Shipman, Jr.,* for the appellant (defendant The Collins Company).

*Jacob Schwolsky,* for the appellee (plaintiff).

*S. Polk Waskowitz* and *Edward S. Pomeranz,* appeared for the defendant American Mutual Liability Insurance Company, but did not file a brief nor argue the cause.

HINMAN, J. The compensation commissioner found that the plaintiff entered the employ of the Collins Company in February, 1917, and worked for that company at wet grinding intermittently until September, 1922, an aggregate period of wet grinding of about forty months. From September, 1922, to July, 1924, he was not working for this company, but thereafter he worked at various times for this employer at polishing until December 16th, 1930, when he became disabled through pneumoconiosis with tuberculosis superimposed thereon. The commissioner found that this disability was directly traceable to the employment as a wet grinder between 1917 and 1922, and that his further employment by the company as a polisher, or elsewhere, was not a material factor in producing the disability. The evidence of record is sufficient to prevent the correction of the findings pertaining to causal connection between the plaintiff's employment and his present disability.

Two insurance companies appeared by counsel at the hearing before the commisioner, each denying that the plaintiff had sustained any compensable injury, but claiming, further, that any such injury, if found, was not within the period of its coverage. The Collins Company moved that the insurers be denied the

privilege of defending the case on the ground that it was apparent that both would attempt to impose the liability on each other or on the employer as self-insurer. Denial of this motion is made a ground of appeal. Under § 5256 of the General Statutes, the insurer is required to include in its policy a provision that it shall be in all things bound by and subject to the findings, awards, and judgments rendered against the assured, and under § 5285 the award is enforceable against the insurer in all respects as against the employer. *Witchekowski* v. *Falls Co.*, 105 Conn. 737, 136 Atl. 565. An insurer would be bound by the commissioner's finding, if unappealed from or confirmed on appeal, concerning the date of the injury, which in turn might be determinative of any subsequent dispute as to coverage. The situation is essentially different from cases in which an insurer under a liability policy, having taken control of an action of negligence brought against its insured, has been held estopped, after an adverse judgment, from denying liability under its policy. *Employers' Liability Assurance Corporation* v. *Chicago & Big Muddy Coal & Coke Co.*, 141 Fed. 962, 964; *Empire State Surety Co.* v. *Pacific National Lumber Co.*, 200 Fed. 224. Where, as here, the issues in the compensation proceedings include not only that of causal relation between the claimed injury and the employment, but others controlling the applicability of successive statutes and consequent compensability, and coverage by successive insurers, the latter, unless allowed to participate in the determination of these issues, might, in subsequent proceedings by the employer against them, find themselves bound by findings made from proceedings for the determination of which they had been precluded. It should be and is at least within the discretion of the commissioner to permit participation of

the insurers in proceedings in which the evidence is taken upon which such findings are to be based, without admission of liability or incurrence thereof by reason of such participation.

The disease from which the claimant was suffering was not made compensable until the amendment to the compensation law enacted in 1919. The claimant's employment at wet grinding began before and continued after that time. Inasmuch as the commissioner has not found when the pneumoconiosis began, the appellant claims that there was no basis for an award of compensation to him because it cannot be determined that the statute afforded a right to compensation for such a disease at the time when the injury arose. Pneumoconiosis is an occupational disease which may develop into tuberculosis. *Madore* v. *New Departure Mfg. Co.*, 104 Conn. 709, 718, 134 Atl. 259. It has been held to be an injury which occurs when the diseased condition arises, and becomes compensable when that condition yields to the infection and unfits the employee for work. *Kovaliski* v. *Collins Co.*, 102 Conn. 6, 9, 10, 128 Atl. 288; *Dupre* v. *Atlantic Refining Co.*, 98 Conn. 646, 652, 120 Atl. 288; *Larke* v. *Hancock Mutual Life Ins. Co.*, 90 Conn. 303, 311, 97 Atl. 320. Where, as in the present case, it is necessary to determine which of successive statutes, differing in important respects, is applicable, difficulty arises from the fact that the injury is not traceable to some accident definitely locating it in point of time and place. It is a condition which gradually develops and increases, its presence may be unknown and unsuspected during a long period of time, the exact or approximate date of its inception and the rate and degree of its progress from time to time incapable of ascertainment when the condition finally is manifested

and incapacity to work results, as through the intervention of infection.

A problem analogous to that presented by the instant case was involved in *Dombrowski* v. *Jennings & Griffin Co.*, 103 Conn. 720, 131 Atl. 745. In that case the commissioner found that the plaintiff for a period of eighteen years had been employed by the defendant in wet grinding, which caused a condition of pneumoconiosis. This was first discovered in October, 1923, but, although probably it had been in existence for a considerable time before that date, it was impossible to find on the evidence how long, or in what degree, it had existed at any given time. Pulmonary tuberculosis developed between October, 1923, and April, 1924, and the plaintiff was incapacitated December 6th, 1924. The defendants claimed before the commissioner that the plaintiff had pneumoconiosis well established prior to July 1st, 1919, the date when the amendment providing for compensation for occupational diseases became effective and, therefore, that only compensation for aggravation, since that date, of pre-existing occupational disease could be awarded. On reservation this court held, after careful and extended discussion of the relevant considerations, that the burden of proof rested upon the defendants to prove that the disease so existed prior to July 1st, 1919, as to bar the plaintiff from full compensation. "This ruling places the burden of proof upon the defendant, after a prima facie case has been established, to show such facts as will defeat or diminish a recovery. This, we believe, is in accord with reason and justice, and is supported by the great weight of authority, and is in harmony with General Statutes, § 5364 [now § 5250], as to the conduct of compensation cases before a commissioner." (p. 728.)

We see no reason why the same principle is not

applicable in the present instance, and discover in the record no indication of compliance therewith. In the absence of proof that the pneumoconiosis existed before July 1st, 1919, and in what degree, the commissioner was justified, as in the *Dombrowski* case, in holding the statute in effect after July 1st, 1919, and in 1922 applicable thereto. This conclusion is fortified by our ruling that the provision of the statute (now contained in § 5223) for apportionment of compensation in cases of aggravation of pre-existing disease was not intended to include an injury or disease, such as pneumoconiosis, "which was contracted, developed and aggravated by one industry or business under employment by the same employer, in one continuous employment or in successive employments." *Romaniec* v. *Collins Co.*, 107 Conn. 63, 67, 139 Atl. 503.

The commissioner "as a matter of information" found the average weekly wage of the plaintiff during twenty-six weeks prior to September 16th, 1930, the last day on which he worked, to be $14.54, but based the award on the average wage, $20.24, for the twenty-six weeks preceding the last day, in September, 1922, on which he did wet grinding. The statute, § 5238, prescribes that ascertainment of the average weekly wage for the purpose of fixing the amount of award shall be made by recourse to "the total wages received by the injured workman from the employer in whose service he is injured during the twenty-six calendar weeks immediately preceding that during which he was injured." The question presented by the assignment of error pertaining to this action of the commissioner is the construction to be accorded to the term injury as involved in this statute. In most sections of the Compensation Act "injury" has reference to the accident or event which results in incapacity to work. In the usual case of an industrial accident, the injury

and the incapacity are substantially coincident. This may also be true where incapacity traceable to pneumoconiosis occurs while the employee is still engaged in the occupation which produced it. In cases like the present, where a considerable period (here eight years) intervenes between the actual injury and the consequent incapacity, determination as to whether the date of the former or the latter is to be taken as the basis of the award becomes of practical importance. There can be no compensation without incapacity. "Compensation under our Act is based upon incapacity, total or partial, and hence is based upon loss of earning power." *Hines* v. *Norwalk Lock Co.,* 100 Conn. 533, 539, 124 Atl. 17; *Wrenn* v. *Connecticut Brass Co.,* 96 Conn. 35, 37, 112 Atl. 638; *Franko* v. *Schollhorn Co.,* 93 Conn. 13, 17, 104 Atl. 435. The just measure of the value of the earning power of an employee and the correlative loss incurred by him would seem to relate to his earnings at the time the loss occurs through incapacity to work, rather than his earnings at an earlier time, perhaps so remote that, through changing conditions, personal or industrial, or both, his earnings at that time no longer accurately or correctly reflect the present value of the earning power of the workman.

In *Esposito* v. *Marlin-Rockwell Corporation,* 96 Conn. 414, 114 Atl. 92, we construed "injury" as used in § 5360 of the General Statutes of 1918 (§ 5245 of the General Statutes of 1930), concerning notice of claim for compensation, as meaning, not "the date of the accident or occurrence which caused the injury, but the date when the state of facts arose which first entitled the plaintiff to compensation." (p. 417.) In *Hines* v. *Norwalk Lock Co., supra,* we accorded a similar construction to § 5347 of the General Statutes of 1918 (§ 5232 of the General Statutes of 1930), con-

cerning notice to the employer. Considerations above mentioned which appear to us equally weighty and controlling lead us to regard it as unreasonable that the General Assembly intended otherwise than that loss of earnings should be ascertained on the basis of the average for the specified period preceding "the date when the state of facts arose which first entitled the plaintiff to compensation," that is, the incapacity. The commissioner based the award, instead, upon the period preceding the end of the plaintiff's service in wet grinding. In this, only, there is error. The Superior Court is directed to sustain the appeal and remand the cause to the commissioner for amendment of the award in accordance with this opinion.

In this opinion the other judges concurred.