STANISLAW MICHNA *vs.* THE COLLINS COMPANY ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued November 2d, 1932—decided February 7th, 1933.

*George H. Day,* for the appellant (defendant The Collins Company).

*Ralph O. Wells* and *William S. Locke,* for the appellee (plaintiff).

HINMAN, J. The finding of the commissioner is that the plaintiff entered the employ of The Collins Company in April, 1913, and worked for about two months in the yard, then started wet grinding, at which occupation he worked practically continuously until August, 1923, when he was transferred to dry grinding and continued at this work until about April 19th, 1924, at which time he quit the employ of The Collins Company and did not work thereafter in its plant. When he entered the employ of The Collins Company he was in good health and, although he noticed a change in his condition prior to his leaving, his health was such that he worked until some time

in 1930 when he began to feel ill and eventually, in August, 1930, was forced to give up employment of all kinds because of a lung condition. Because of his grinding at the Collins plant, he contracted a pneumoconiotic condition of the lungs and this disease is the cause of his disability. Experience shows that pneumoconiosis may be contracted by a worker and not cause disability for some years thereafter. Frequently a long time after the worker has quit wet grinding his health fails and his lungs break down due to the pneumoconiosis which he acquires in this occupation. The plaintiff's disability is chargeable to his employment by The Collins Company as a wet grinder, and the record does not indicate that his work in other occupations in which he was engaged after 1924 played any part in his present disability. The plaintiff having contracted pneumoconiosis is entitled to compensation inasmuch as that disease constitutes a compensable personal injury, which injury arose out of and in the course of his employment by the defendant.

The commissioner held, further, that the plaintiff had been disabled from work of all description because of his pneumoconiosis since August 23d, 1930, and awarded compensation from that date based upon his average weekly wage during his last twenty-six weeks of employment by The Collins Company.

The only material correction of the finding, sought by the defendant, as to operative facts, which was not granted either by the compensation commissioner or by the Superior Court is to the effect that the disability of the plaintiff from following his customary occupation occurred in July, 1924, instead of August, 1930, as found. It appears from the undisputed evidence that the reason for the plaintiff's ceasing work at wet grinding in 1923 was that this kind of work was

then discontinued in the defendant's shop. After April, 1924, when he left employment with the defendant as a dry grinder, the plaintiff worked for others as a laborer at heavy work until 1930, and it does not appear that any inability to work, occasioned by pneumoconiosis, occurred before the latter time. It was within the province of the commissioner to discredit the indefinite testimony of the plaintiff as to discomfort in his chest or to exclude it from effect upon his capacity to work in 1924, especially in view of his employment history after leaving the employ of the defendant, and the medical evidence. We cannot hold that the evidence requires the change requested. Consequently, the defendant is not entitled to a conclusion that the plaintiff failed to file claim for compensation within one year after occurrence of incapacity as required by § 5245 of the General Statutes (General Statutes, 1918, § 5360) as construed in *Esposito v. Marlin-Rockwell Corporation*, 96 Conn. 414, 114 Atl. 92.

One of the two claims of law reserved for the advice of this court, as stated by the defendant, is that "the commissioner erred in holding that the date of the injury is the date when the claimant was first disabled for seven days from work of all description" instead of the date when he was first incapacitated "from working at his customary occupation" although able to engage in some other employment. The ruling and conclusion of the commissioner were based on the facts found and these do not disclose any disability to work, because of pneumoconiosis, until August 23d, 1930, although the disablement then occurring was from work of all descriptions. If it appeared, instead, that the plaintiff had ceased wet grinding in 1923 or dry grinding in 1924 because of incapacity to do that work on account of pneumoconiosis, but was yet able to

work at some other, although less lucrative, employment and had then claimed compensation for partial incapacity, he would have been entitled to it. There is nothing in the commissioner's decision in the present case which questions or impairs that right. Also, when such partial incapacity eventually became total, he would be entitled to compensation accordingly. The situation presented by this record, however, is a total disability not preceded by any period of partial incapacity and is to be so treated both as to necessity of notice to the employer, as we have indicated, and as to amount of compensation.

The further question reserved relates to the basis of computation of the amount of compensation. The commissioner based the award upon the average weekly wage earned by the plaintiff during his last twenty-six weeks of employment by the defendant, which was at dry grinding. The defendant contends that it should be based on the average weekly wage prevailing in the same or similar employment in the locality on the date when plaintiff first suffered seven days' disability, which the finding states to be August, 1930; the plaintiff claims the basis should be the last twenty-six weeks of his employment by the defendant as a wet grinder. The statute (now § 5238) provides that the average weekly wage which is the basis of compensation "shall be ascertained by dividing the total wages received by the injured workman from the employer in whose service he is injured during the twenty-six calendar weeks immediately preceding that during which he was injured, by the number of calendar weeks during which, or any portion of which, such workman was actually employed by such employer. . . . When the employment previous to injury as provided above is computed to be less than a net period of two calendar weeks, his weekly wage shall

be considered to be equivalent to the average weekly wage prevailing in the same or similar employment in the same locality at the time of injury." The methods so prescribed are particularly adapted to and capable of practical application to the usual case— where the incapacity attends or soon follows the injury, and no difficulty is encountered even where there is a considerable interval between the actual injury and the resulting incapacity if the employer remains the same. *Rousu* v. *Collins Co.,* 114 Conn. 24, 30, 157 Atl. 264.

In that case we pointed out (p. 31) that "the just measure of the value of the earning power of an employee and the correlative loss incurred by him would seem to relate to his earnings at the time the loss occurs through incapacity to work, rather than his earnings at an earlier time, perhaps so remote that, through changing conditions, personal or industrial, or both, his earnings at that time no longer accurately or correctly reflect the present value of the earning power of the workman." We there held that loss of earnings should be ascertained on the basis of the average for the specified period preceding "the date when the state of facts arose which first entitled the plaintiff to compensation," that is, the incapacity. We have considered, with care appropriate to the earnestness with which they are advanced, the arguments in behalf of this plaintiff, and others somewhat similarly situated, adverse to the conclusion reached in the *Rousu* case, and have diligently reconsidered our holding in that case in the light of the further considerations which have been urged, but we still regard the views expressed therein as reflecting the true intent and meaning of the statutes involved. When all of the relevant considerations are broadly contemplated, no inconsistency with the Compensa-

tion Act as a whole and no real injustice inheres in our conclusion in that case or is revealed in its application here. If, as we assume, the average earnings of the plaintiff in his later occupation as a laborer were less than as a wet grinder or a dry grinder, the compensation to which he is entitled obviously will be less than it would be on the basis adopted by the commissioner—his wages as a dry grinder—or that contended for by the plaintiff—his earnings as a wet grinder—or, probably, the present average earnings of grinders. But, as we have noted, if his transition to less remunerative occupations had been claimed and found to be occasioned by impairments resulting from pneumoconiosis, and compensation for partial incapacity had been sought and awarded, successive decreases in earning power would have been progressively compensated for to the extent that the Compensation Act intends. Where, instead, reductions in earning capacity result from causes unconnected with compensable injury, such as personal deficiencies developed or changes in industrial conditions, the employee is not in fairness entitled to have such considerations ignored in determining the loss of earnings incurred by him through the advent of incapacity to work, finally incurred from a cause occasioned at a time long past and more advantageous from the standpoint of earnings.

The instant case presents a further and doubtless rare complication, in that the incapacity which first entitled the plaintiff to compensation did not arise until a long time—more than six years—after he had left the employ of the defendant, and was, and for most of the intervening time had been, engaged in labor of a different and presumably less profitable nature. Nevertheless, as in the *Rousu* case, his loss is of his earnings at the time the incapacity occurs

instead of those at the earlier time when the pneumoconiosis was acquired, which may no longer represent the present value of his earning power. Therefore, logically, the basis of his compensation should be his average weekly earnings at the time when his incapacity occurred, August, 1930, ascertained under the provisions of § 5238. The method of computation therein prescribed is based upon the wages "received . . . from the employer in whose service [the workman] is injured" except when the employment is less than a net period of two calendar weeks, in which case the basis is the average wage prevailing in the same or similar employment in the same locality. In the *Rousu* case, we have construed "injury" as employed in and for the purposes of this section of the statute to mean, not the accident or occurrence which caused the original physical injury, but the state of facts which first entitled the plaintiff to compensation, that is, the incapacity. The basis of ascertainment of average weekly wage, in accordance with this section, therefore, is the wages received from the employer in whose service the plaintiff was at the time his incapacity occurred, even though in the exceptional case, as here, a change of employers intervenes between the physical injury (here the pneumoconiosis) and the incapacity. The finding does not contain the facts requisite to an award on the basis which we have just indicated.

The Superior Court is advised to remand the case to the compensation commissioner for such hearing as may be necessary to develop these facts and for amendment of the award in amount in conformity to this opinion.

In this opinion the other judges concurred.