JAMES MULLIGAN *v.* F. S. ELECTRIC ET AL.
(14981)

PETERS, C. J., and BORDEN, NORCOTT, KATZ and PALMER, Js.

Argued October 25—decision released December 27, 1994

*Diane D. Duhamel*, with whom were *Robert L. Trow-bridge* and, on the brief, *David W. Schoolcraft*, for the appellants-appellees (defendants).

*Ian A. Cole*, for the appellee-appellant (plaintiff).

BORDEN, J. The issues in this appeal and cross appeal are: (1) under General Statutes § 31-307b,[1] the extent

---

[1] During the relevant time period, General Statutes (Rev. to 1989) § 31-307b provided: "BENEFITS AFTER RELAPSE FROM RECOVERY. RECURRENT INJURIES. If any employee who receives benefits under section 31-307 returns to work after recovery from his injury and subsequently suffers

to which an employee must recover from an injury prior to returning to work in order to qualify for workers' compensation benefits under General Statutes (Rev. to 1989) § 31-307b after a relapse from recovery; and (2) whether an injured employee's workers' compensation benefit rate, as defined by General Statutes (Rev. to 1989) §§ 31-307 and 31-310,[2] should be determined,

total or partial incapacity caused by a relapse from the recovery from, or a recurrence of, such injury, such employee shall be paid a weekly compensation equal to sixty-six and two-thirds per cent of his average weekly earnings at the time of the original injury or at the time of his relapse or at the time of the recurrence of such injury, whichever is the greater sum, subject to the maximum rate of compensation set pursuant to section 31-309 for the year in which such employee suffered the relapse or recurrent injury and the minimum rate under this chapter for said year, and provided (1) such compensation shall not continue longer than the period of total or partial incapacity following the relapse or recurrent injury and (2) no employee eligible for compensation for specific injuries set forth in section 31-308 shall receive compensation under this section. Such employee shall also be entitled to receive the cost-of-living adjustment provided in accordance with the provisions of section 31-307a, commencing on October first following the relapse or recurrent injury which disables him. If such injury occurred originally prior to October 1, 1969, the difference between the employee's original weekly compensation rate and the rate required by this section and the cost-of-living adjustment, if any, thereafter due shall be paid initially by the employer or his insurance carrier who shall be reimbursed therefor from the second injury fund as provided by section 31-354 upon presentation of such vouchers and information as the treasurer shall require. In no event shall such employee receive more than the prevailing maximum benefits." The statute has been amended in respects not relevant to this appeal.

[2] During the relevant time period, General Statutes (Rev. to 1989) § 31-307 provided in relevant part: "COMPENSATION FOR TOTAL INCAPACITY. If any injury for which compensation is provided under the provisions of this chapter results in total incapacity to work, there shall be paid to the injured employee a weekly compensation equal to sixty-six and two-thirds per cent of his average weekly earnings at the time of the injury; but the compensation shall in no case be more than the maximum weekly benefit rate set forth in section 31-309 for the year in which the injury occurred . . . . In the case of an occupational disease, the time of injury shall be the date of total or partial incapacity to work as a result of such disease. No employee entitled to compensation under this section shall receive less than twenty per cent of the maximum weekly compensation rate, as provided in section 31-309, provided such minimum payment shall not exceed eighty per-

in the case of a traumatic injury, by reference to the employee's earnings preceding the date on which he was injured or preceding the date on which he became incapacitated. The respondents, F. S. Electric (F. S.) and its workers' compensation insurer, Transamerica Insurance Company (Transamerica), appeal[3] from the decision of the workers' compensation commission compensation review board (board) reversing a workers' compensation commissioner's denial of § 31-307b benefits to the claimant, James Mulligan. The claimant cross

cent of the employee's average weekly wage, as determined under section 31-310; and such compensation shall not continue longer than the period of total incapacity. . . ." The statute has been amended in respects not relevant to this appeal.

During the relevant time period, General Statutes (Rev. to 1989) § 31-310 provided in relevant part: "DETERMINATION OF AVERAGE WEEKLY WAGE OF INJURED WORKER. CONCURRENT EMPLOYMENT. PAYMENTS FROM SECOND INJURY FUND. For the purposes of this chapter, the average weekly wage shall be ascertained by dividing the total wages received by the injured worker from the employer in whose service he is injured during the twenty-six calendar weeks immediately preceding that during which he was injured, by the number of calendar weeks during which, or any portion of which, such worker was actually employed by such employer, but, in making such computation, absence for seven consecutive calendar days, although not in the same calendar week, shall be considered as absence for a calendar week. When the employment commenced otherwise than at the beginning of a calendar week, such calendar week and wages earned during such week shall be excluded in making the above computation. When the employment previous to injury as provided above is computed to be less than a net period of two calendar weeks, his weekly wage shall be considered to be equivalent to the average weekly wage prevailing in the same or similar employment in the same locality at the time of injury except that, when an employer has agreed to pay a certain hourly wage to such worker, then the hourly wage so agreed upon shall be the hourly wage for such injured worker and his average weekly wage shall be computed by multiplying such hourly wage by the regular number of hours that is permitted each week in accordance with such agreement. . . ." The statute has been amended in respects not relevant to this appeal.

[3] The respondents appealed and the claimant cross appealed from the decision of the workers' compensation commission compensation review board to the Appellate Court pursuant to General Statutes § 31-301b, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

appeals from the decision of the board affirming the commissioner's determination that benefits should be calculated on the basis of the claimant's earnings prior to his injury. We affirm on the appeal, reverse on the cross appeal and remand for a recalculation of benefits accordingly.

The following facts are undisputed. On July 16, 1987, the claimant sustained an accidental injury to his lower back in the course of and arising out of his employment by F. S., when, while climbing a ladder to install lighting, he felt a pop in his back. Although the injury was compensable, the claimant did not miss any work or claim any benefits until more than two years later, when the claimant's physician certified that as a result of the injury, the claimant had become totally disabled. The claimant was out of work from September 23, 1989, to December 5, 1989, during which time he received temporary total disability compensation pursuant to § 31-307. On December 5, 1989, the claimant returned to work with the permission of his physician and without any medical restrictions, and, therefore, his § 31-307 payments ceased. Although the claimant continued to experience symptoms related to his 1987 injury and continued to receive medical treatment, he continued to work until February 16, 1990, when he again became totally disabled as a result of the original 1987 injury.

In the proceedings before the commissioner, the claimant contended that the compensation rate for both periods of disability should be calculated on the basis of his earnings during the twenty-six week period immediately preceding each period of incapacity, while the respondents claimed that the compensation should be based on the claimant's earnings during the twenty-six week period prior to his July 16, 1987 injury. The commissioner agreed with the respondents and based

the calculation of benefits on the claimant's earnings prior to his injury.

The claimant also asserted a claim for benefits pursuant to § 31-307b, which provided that "[i]f any employee who receives benefits under section 31-307 returns to work after recovery from his injury and subsequently suffers total or partial incapacity caused by a relapse from the recovery from, or a recurrence of, such injury, such employee shall be paid a weekly compensation equal to" the greater of his § 31-307 benefits or benefits based on his compensation during the twenty-six weeks preceding the relapse or recurrence. The commissioner concluded that, although the claimant had returned to work, he had not "recovered" from his injury because, while working from December 5, 1989, to February 16, 1990, he continued to experience symptoms, receive medical treatment, and take prescribed medication. The commissioner, therefore, denied the claimant's request for § 31-307b benefits.

Challenging both conclusions, the claimant appealed to the board, which affirmed the commissioner's calculation of benefits based on the date the claimant sustained his injury, but reversed the commissioner's denial of § 31-307b benefits and remanded the matter to the commissioner for determination of the claimant's § 31-307b benefits. This appeal and cross appeal followed.[4]

[4] Before reaching the merits of the parties' claims, we must decide, as a jurisdictional matter, whether this appeal is properly before us. "It is axiomatic that appellate review of disputed claims of law and fact ordinarily must await the rendering of a final judgment by the compensation review division. . . . The finality of the decision of the review division is called into question in this case because of the review division's order of a remand for further administrative proceedings. The test that determines whether such a decision is a final judgment turns on the scope of the proceedings on remand: if such further proceedings are merely ministerial, the decision is an appealable final judgment, but if further proceedings will require the exercise of independent judgment or discretion and the taking of addi-

I

The respondents claim on their appeal that, because § 31-307b benefits are available only to an incapacitated employee who had returned to work after recovery from the injury that caused his initial incapacity, the board improperly reversed the commissioner's denial of benefits. In this case, although the claimant returned to work, he still continued to experience symptoms, take prescription medication and receive treatment and therefore, the respondents argue, he did not return "to work *after recovery from his injury.*" (Emphasis added.) General Statutes (Rev. to 1989) § 31-307b. We agree with the board that the claimant need only have recovered sufficiently to have returned to work with medical permission to be entitled to § 31-307b benefits on a relapse or recurrence of the injury.[5]

The dispositive issue is the meaning of the phrase "returns to work after recovery from his injury" in § 31-307b. The respondents argue that the commissioner gave proper effect to the meaning of "after recovery from his injury" as intended by the legisla-

tional evidence, the appeal is premature and must be dismissed." (Citations omitted.) *Szudora* v. *Fairfield,* 214 Conn. 552, 556, 573 A.2d 1 (1990).

In this case, as in *Szudora,* "[t]he proceedings contemplated on remand are . . . confined to the arithmetical task of compiling the requisite fiscal data . . . ." Id., 557. Compliance with the remand order would require the commissioner to undertake only the ministerial task of calculating benefits based on ascertainable and undisputed wage information and would require no exercise of discretion on the part of the commissioner. We therefore conclude that the decision of the review division was a final judgment and that this case is properly before us.

[5] We note that the board was also correct in its holding that, by the clear mandate of § 31-307b, an employee is not eligible for benefits pursuant to that section if he has received a specific indemnity award for permanent partial disability pursuant to General Statutes § 31-308, even if he meets the other eligibility requirements. See General Statutes (Rev. to 1989) § 31-307b ("no employee eligible for compensation for specific injuries set forth in section 31-308 shall receive compensation under this section").

ture in § 31-307b. We agree with the conclusion of the board, however, that the commissioner improperly determined that the claimant had not recovered when he returned to work. We reach our conclusion on the basis of our interpretation of the language of § 31-307b as applied to the facts of this case.

"It is axiomatic that the process of statutory interpretation involves a reasoned search for the intention of the legislature." *In re Valerie D.*, 223 Conn. 492, 512, 613 A.2d 748 (1992); *Lauer v. Zoning Commission*, 220 Conn. 455, 459–60, 600 A.2d 310 (1991). "In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . *Ambroise v. William Raveis Real Estate, Inc.*, [226 Conn. 757, 764, 628 A.2d 1303 (1993)]; see *Glastonbury Volunteer Ambulance Assn., Inc. v. Freedom of Information Commission*, 227 Conn. 848, 852–57, 633 A.2d 305 (1993)." (Citations omitted; internal quotation marks omitted.) *State v. Metz*, 230 Conn. 400, 409, 645 A.2d 965 (1994); *Fleming v. Garnett*, 231 Conn. 77, 91–92, 646 A.2d 1308 (1994).

Under the language of § 31-307b, a claimant qualifies for benefits only when he suffers a relapse or recurrence after he had returned to work "after recovery from his injury." Although the extent of recovery required is not defined by the statute, the legislative history surrounding this provision is instructive.

When it was originally enacted in 1967, § 31-307b provided for benefits following a relapse after an employee "returns to work after *maximum* recovery from his injury." (Emphasis added.) Public Acts 1967, No. 842, § 28, codified as General Statutes (Cum. Sup.

1967) § 31-307b. In the parlance of workers' compensation law, maximum recovery is reached when there is no reasonable prognosis for further recovery, whether the worker has recovered fully from his injury or has recovered only partially but will never fully recover. See, e.g., *McCurdy* v. *State*, 227 Conn. 261, 630 A.2d 54 (1993). In 1969, the General Assembly amended § 31-307b by eliminating the word "maximum." Public Acts 1969, No. 696, § 6.

The respondents and the claimant agree that elimination of the word "maximum" from the statute means that a worker need not have fully recovered, or have recovered to the greatest extent possible, before returning to work, in order to qualify later for benefits pursuant to § 31-307b. The respondents claim that the legislature, by eliminating the modifier "maximum" without also redefining the extent of recovery necessary for eligibility for § 31-307b benefits, intended to leave wholly to the discretion of the commissioner the extent to which recovery was required in any individual case. We disagree.

The respondents have offered no basis for their conclusion beyond asserting that this is the plain meaning of the legislature's words. To the contrary, our analysis of the language, read in the light cast by its legislative history, leads us to conclude that the legislature intended any degree of recovery, coupled with a return to work with medical permission, to be sufficient for an incapacitated worker to qualify for benefits pursuant to § 31-307b, if he later becomes incapacitated due to a relapse or recurrence of his injury.

House Bill No. 6311, enacted as No. 696 of the 1969 Public Acts, consisted of numerous amendments to our Workers' Compensation Act. Included among them was the creation of cost of living adjustments for injured workers. In § 6 of the bill, the legislature

granted this cost of living adjustment to workers who had reached recovery, but then suffered a relapse. Representative Dominic J. Badolato offered an amendment to the bill that eliminated the word "maximum" from § 31-307b. In offering this amendment, Representative Badolato stated that to leave the word "maximum" in the statute "would exclude from the benefits of the statutes one who is convalescing but anxious to rehabilitate himself *sufficiently to return to gainful employment.*" (Emphasis added.) 13 H.R. Proc., Pt. 8, 1969 Sess., p. 4010. In light of the apparent intent of the legislature to adopt a standard that would grant benefits to an incapacitated employee who had recovered sufficiently to return to work, we decline to adopt the respondents' construction, which would allow the commissioner to grant or deny benefits without adherence to any governing standard.

Using the standard intended by the legislature, we conclude that any totally incapacitated employee who returns to work with medical permission has done so "after recovery from his injury." A worker is entitled to total disability payments pursuant to § 31-307 only when his injury results in a "total incapacity to work," which we have defined as "the inability of the employee, because of his injuries, to work at his customary calling or at any other occupation which he might reasonably follow." *Czeplicki* v. *Fafnir Bearing Co.*, 137 Conn. 454, 456, 78 A.2d 339 (1951); *Revoir* v. *New Britain*, 2 Conn. App. 255, 259, 477 A.2d 161 (1984). We can see no rational explanation for how a worker who is physically unable to work can return to work without at least some degree of "recovery" from his injuries.

It is undisputed that the claimant was entitled to temporary total disability payments pursuant to § 31-307 for the duration of his first period of incapacity, and that he thereafter returned to work with medical permission with no medical restrictions. Applying our

interpretation of the words "returns to work after recovery from his injury" to the factual findings of the commissioner, we conclude that the board properly determined that the claimant qualified for benefits pursuant to § 31-307b.

The respondents also argue that, even if the board's interpretation of § 31-307b is valid, the commissioner's finding that the claimant had not recovered from his injury prior to returning to work was a factual finding entitled to deference by the board. We disagree.

"The power and duty of determining the facts rests on the commissioner, the trier of facts. . . . [T]he conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Internal quotation marks omitted.) *Crochiere* v. *Board of Education*, 227 Conn. 333, 347, 630 A.2d 1027 (1993). The underlying facts that led the commissioner to conclude that the claimant had not recovered, namely, that the claimant continued to experience symptoms, to receive treatment from his physician and to take prescription medication, were factual findings. The commissioner's conclusion based on these facts, however, namely, that the claimant had not recovered before returning to work, was a conclusion of law based on an application of the legal meaning of "after recovery from his injury" to the underlying facts. In reversing the commissioner, the board did not disturb the commissioner's factual findings, but rather reversed his legal conclusion on the basis of his incorrect application of the law to those facts.

## II

The claimant argues on the cross appeal that the board improperly affirmed the commissioner's determination that the claimant's benefits should be calcu-

lated on the basis of his earnings preceding his injury. We agree with the claimant that the calculation should have been based on his earnings preceding his incapacity.

Section 31-307 provides that compensation is based on a percentage of the claimant's "average weekly earnings at the time of the injury," and § 31-310 provides that "[f]or the purposes of this chapter, the average weekly wage shall be ascertained by dividing the total wages received by the injured worker from the employer in whose service he is injured *during the twenty-six calendar weeks immediately preceding that during which he was injured*, by the number of calendar weeks during which, or any portion of which, such worker was actually employed by such employer . . . ." (Emphasis added.) General Statutes (Rev. to 1989) § 31-310. The claimant argued before the board that *Rousu* v. *Collins Co.*, 114 Conn. 24, 157 A. 264 (1931), *Michna* v. *Collins Co.*, 116 Conn. 193, 164 A. 502 (1933), and *Stevens* v. *Raymark Corp./Raybestos Manhattan*, 28 Conn. App. 226, 610 A.2d 710, cert. denied, 223 Conn. 921, 614 A.2d 830 (1992), stand for the proposition that this language refers to the date of the claimant's incapacity, not the date of his injury, when the two dates are different. The board rejected this argument, reading our holding in *Rousu* and its progeny to pertain only to incapacity arising out of an occupational disease or similar circumstance where a specific date of injury is not discernible. We agree with the claimant's reading of our longstanding construction of this language.

In *Rousu* v. *Collins Co.*, supra, 114 Conn. 24, the claimant, Rousu, was disabled on December 16, 1930, by the occupational disease pneumoconiosis, which was found to be directly traceable to his employment with the Collins Company as a wet grinder between 1917 and 1922. Id., 26. The commissioner awarded benefits

based on Rousu's average weekly wage preceding the last day he did wet grinding, which was calculated to be $20.24 per week. The employer appealed, arguing that the benefits should have been calculated based on Rousu's average weekly wage preceding his disability in 1930, which was calculated to be $14.54. Id., 30. This court determined that the correct calculation was that based on Rousu's earnings preceding his disability in 1930.

Our decision rested on the fact that while "[i]n the usual case of an industrial accident, the injury and the incapacity are substantially coincident . . . [i]n cases like the present, where a considerable period . . . intervenes between the actual injury and the consequent incapacity, determination as to whether the date of the former or the latter is to be taken as the basis of the award becomes of practical importance. There can be no compensation without incapacity. Compensation under our Act is based upon incapacity, total or partial, and hence is based upon loss of earning power. . . . *The just measure of the value of the earning power of an employee and the correlative loss incurred by him would seem to relate to his earnings at the time the loss occurs through incapacity to work, rather than his earnings at an earlier time, perhaps so remote that, through changing conditions, personal or industrial, or both, his earnings at that time no longer accurately or correctly reflect the present value of the earning power of the workman.*" (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 30–31; see also *Michna* v. *Collins Co.*, supra, 116 Conn. 198 ("we still regard the views expressed [in *Rousu*] as reflecting the true intent and meaning of the statutes involved");[6]

---

[6] We note that in both *Rousu* and *Michna*, computation of benefits based on the date of incapacity, rather than the date of injury, resulted in lower benefits to the claimant. The rule in *Rousu* is neutral in its application and can result in lower benefits, as in those cases, or higher benefits, as the claimant argues for in this case.

*Stevens* v. *Raymark Corp./Raybestos Manhattan*, supra, 28 Conn. App. 228 ("[t]he applicable case law provides that the relevant date for determining compensation to an injured worker is the date of his incapacity to work").

The respondents assert that the board correctly determined that *Rousu* and its progeny are applicable only in cases involving disability caused by an occupational disease. They argue that the date of incapacity is used in such cases only because the date of the worker's injury is not ascertainable. We disagree.

Although the respondents are correct that *Rousu* and its progeny did concern disability caused by occupational diseases, an inability to determine when the injury occurred was not the touchstone of our decision in *Rousu*. Indeed, in *Rousu*, we had to determine when the injury occurred in order to resolve a threshold issue in the case, which was whether Rousu was entitled to any compensation at all. The disease from which Rousu was suffering first became compensable under the compensation law in 1919. Because Rousu was engaged in wet grinding both before and after the time of the amendment, his employer claimed that he was therefore ineligible for compensation. We determined that Rousu was eligible for compensation, relying on a presumption that, in the absence of a showing that the disease existed earlier, the date of injury was the last date of employment in the job that caused the occupational disease. We had already determined a date of injury, therefore, before we addressed the question of whether to calculate benefits on the basis of earnings preceding the date of injury or preceding the date of incapacity. The respondents' reading of *Rousu*, therefore, rests on a predicate that was not present in the case, namely, that the date of injury in an occupational disease case is not ascertainable. Because the holding of *Rousu* was not the rule of convenience argued for by the respon-

dents, but rather an implementation of the legislature's intent to compensate an incapacitated worker based upon his loss of earning power, it applies with equal force to a claim arising out of a traumatic injury as to a claim arising out of an occupational disease.[7]

The respondents further claim that the legislature codified the respondents' view of the rule established in *Rousu* when it amended § 31-307 to provide specifically that "[i]n the case of an occupational disease, the time of injury shall be the date of total or partial incapacity to work as a result of such disease." General Statutes (Rev. to 1989) § 31-307. The respondents argue that because the legislature specified only that the benefits calculation for occupational disease claims is to be based on earnings prior to incapacity, the legislature intended traumatic injuries to be treated differently. We disagree.

Number 80-124 of the 1980 Public Acts, entitled "An Act Concerning the Date of Filing and the Time of Injury for an Occupational Disease Claim Under the Workers' Compensation Act," had two provisions. The first provided for an extension, from one year to three years from the first manifestation of symptoms, of the time allowed in which an individual may file a claim for disability arising out of an occupational disease. See General Statutes (Rev. to 1981) § 31-294 (repealed and recodified as General Statutes § 31-294c). The second

---

[7] *Michna* v. *Collins Co.*, supra, 116 Conn. 193, and *Stevens* v. *Raymark Corp./Raybestos Manhattan*, supra, 28 Conn. App. 226, also support our interpretation of *Rousu*. When we affirmed *Rousu* in *Michna*, there was no mention of any difficulty in ascertaining the date of injury in an occupational disease case. Rather, in both *Michna* and *Stevens*, the party arguing that earnings preceding the date of injury should be used to determine compensation presumed that date to be the last day of work in the position that caused the occupational disease. Both cases, as noted above, were decided on the basis of the holding of *Rousu* that compensation is to be based on the injured worker's loss of earning power, best approximated by his earnings preceding his incapacity.

provision was that at issue in this case. We conclude, on the basis of the legislative history, that the legislature did not intend to limit our holding in *Rousu* to cases involving occupational diseases.

In discussion of the bill on the Senate floor, Senator Michael J. Skelley remarked that the bill would ensure that the workers' compensation scheme "deals with all disabilities evenly—meaning that if an individual has a physical disability, is put out of work, that he collects his worker's comp *according to his present earnings. The occupational disease will be handled in a similar manner.*" (Emphasis added.) 23 S. Proc., Pt. 3, 1980 Sess., p. 631. Representative Walter J. Henderson stated on the floor of the House of Representatives that the purpose of the bill was to treat workers affected by occupational diseases in the same manner as those suffering from traumatic injuries. "In this bill we are trying to treat occupational disease as closely as we can to other kinds of injury, such as losing a hand or breaking a back. In cases like that, the compensation depends upon what they are making when the injury occurs. This bill makes sure that in occupational disease cases the rate is figured the same way. . . . *This ensures that a worker who suffers from an occupational disease gets compensation based on what he was earning when he was forced to stop because of the disease.*" (Emphasis added.) 23 H.R. Proc., Pt. 12, 1980 Sess., pp. 3457–58.

Contrary to the respondents' assertions, this debate indicates that the legislature did not intend to disturb our holding in *Rousu* that the proper measure of compensation is based on the worker's lost earning power. Indeed, there is no evidence from the floor debate that the legislature had any concern with an inability to determine the date of injury in a case of occupational disease. As evident from the floor debate, the legislators acted with an awareness that in the vast majority

of traumatic injury cases, the date of injury and the date of incapacity are the same. This does not mean, however, that the legislature intended to abrogate the rule in *Rousu* in those rare cases where it is applicable to a worker incapacitated by traumatic injury. Under the respondents' reading of the statute, all incapacitated workers suffering from an occupational disease or suffering from a traumatic injury that caused immediate incapacity would receive workers' compensation benefits based on their earnings preceding their incapacity. Only those few workers, such as the claimant, suffering from traumatic injuries that cause delayed incapacity would not be compensated on the basis of their earnings preceding their incapacity. Those workers would receive benefits calculated on the basis of their earnings preceding their injuries, regardless of whether such a calculation would result in benefits representative of their lost earning power. Given the legislature's intent to treat injured workers equally and to provide all incapacitated workers with compensation based on their loss of earning power, we decline to adopt this anomalous result.

The decision of the compensation review board is affirmed on the appeal, reversed on the cross appeal, and the case is remanded to the board for a recalculation of benefits accordingly.

In this opinion the other justices concurred.