CELESTINA GREEN *v.* GENERAL DYNAMICS CORPO-
RATION, ELECTRIC BOAT DIVISION, ET AL.
(14491)

Dupont, C. J., and Foti, Lavery, Landau, Heiman, Spear and Hennessy, Js.

Argued March 19—reargued September 11—officially released
December 31, 1996*

*Lucas D. Strunk,* for the appellants (named defend-
ant et al.).

---

* December 31, 1996, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Nathan Julian Shafner*, with whom, on the brief, was *Amy M. Stone*, for the appellee (plaintiff).

HEIMAN, J. The defendant[1] appeals from the decision of the compensation review board of the workers' compensation commission (review board). The review board affirmed the finding and award of the workers' compensation commissioner for the second district (commissioner). On appeal, the defendant claims that the review board improperly affirmed the commissioner's award of dependent's death benefits to the plaintiff. We reverse the decision of the review board.

The commissioner found the following relevant facts. Everett and Celestina Green were married in 1947. Everett Green worked as an electrician for Electric Boat in Groton from September 6, 1949, to June 17, 1978, when he retired. He did not retire as a result of illness or disease. During the course of his employment, however, he was exposed to asbestos. Following his retirement from Electric Boat, he worked at the Norwich Convalescent Center. As of January 1, 1988, at the age of sixty-four, he had retired from his job at the convalescent center and had started to collect social security benefits.[2]

On July 6, 1989, Everett Green was admitted to Backus Hospital for an exploratory thoracotomy. On July 11, 1989, he was diagnosed with malignant mesothelioma, a form of cancer. It was established that the mesothelioma was caused by exposure to asbestos. On December 8, 1989, he died as a result of the mesothelioma. Prior to the death of Everett Green (hereinafter

[1] The defendants on appeal are the Electric Boat Division of General Dynamics Corporation, CIGNA Property and Casualty Company and Aetna Casualty and Surety Company. We refer to these defendants collectively as the defendant.

[2] The commissioner did not make a finding as to exactly when Everett Green retired from his job at the convalescent center. The plaintiff indicates in her brief that Everett Green worked at the center from 1981 until 1985.

the decedent), Celestina Green (hereinafter the plaintiff) was wholly dependent on him for financial support.

On the basis of these facts, the commissioner found that the date of the decedent's incapacity was July 11, 1989, and that the decedent had died from an occupational disease that he had contracted as a result of his exposure to asbestos during the course of his employment with Electric Boat.[3] The commissioner also determined that the plaintiff was entitled to dependent's death benefits pursuant to General Statutes (Rev. to 1989) § 31-306,[4] and that the plaintiff's compensation rate should be based on the decedent's average weekly earnings during his final twenty-six weeks of employment with Electric Boat in 1978, subject to the statutory maximum compensation rate in effect on the date of his incapacity.[5]

The defendant appealed the commissioner's decision to the review board. The review board found that the commissioner had properly awarded dependent's death benefits to the plaintiff and had properly determined the weekly compensation rate to be paid to the plaintiff. The review board based its decision on its interpretation of General Statutes (Rev. to 1989) § 31-306, its own published opinions,[6] and a retroactive application of

---

[3] These findings are not disputed by the parties.

[4] General Statutes (Rev. to 1989) § 31-306 provides in pertinent part: "(b) Compensation shall be paid on account of death resulting from an accident arising out of and in the course of employment or from an occupational disease as follows . . . (2) To those wholly dependent upon the deceased employee at the time of his injury, a weekly compensation equal to sixty-six and two-thirds per cent of the average weekly earnings of the deceased at the time of injury but in no case more than the maximum weekly benefit rate set forth in section 31-309 for the year in which the injury occurred or less than twenty dollars weekly. In the case of an occupational disease, the time of injury shall be the date of total or partial incapacity to work as a result of such disease. . . ."

[5] The commissioner made other findings not at issue in this appeal.

[6] The review board based its decision in part on its opinions in the following cases: *Orcutt* v. *Ohmweave Co.*, 8 Conn. Workers' Comp. Rev. Op. 125 (1990),

General Statutes (Rev. to 1991) § 31-310c,[7] enacted as Public Acts 1990, No. 90-116, § 8, which became effective on October 1, 1990, subsequent to the date of the decedent's incapacity.[8] The defendant appealed to this court from the decision of the review board.

The defendant claims that the review board improperly affirmed the commissioner's award of dependent's death benefits to the plaintiff. The defendant posits that the plaintiff is not entitled to dependent's death benefits based on the decedent's average weekly earnings during his final twenty-six weeks of employment with Electric Boat in 1978. We agree and conclude that the plaintiff is not entitled to dependent's death benefits.

We first set forth our standard of review. "The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . *Besade* v. *Interstate Security Services*, 212 Conn. 441, 449, 562 A.2d 1086 (1989). The compensation review [board] must review the appeal on the record and must not retry facts. *Hicks* v. *Department of Administrative Services*, 21 Conn. App. 464, 466, 573 A.2d 770, cert. denied, 216 Conn. 804, 577 A.2d 716

and *Deremer* v. *General Dynamics Corp.*, 11 Conn. Workers' Comp. Rev. Op. 317 (1993).

[7] General Statutes (Rev. to 1991) § 31-310c provides in pertinent part: "[I]n the case of an occupational disease the average weekly wage shall be calculated as of the date of total or partial incapacity to work. However, in the case of an occupational disease which manifests itself at a time when the worker has not worked during the twenty-six weeks immediately preceding the diagnosis of such disease, the claimant's average weekly wage shall be considered to be equivalent to the greater of (1) the average weekly wage determined pursuant to section 31-310 and adjusted pursuant to section 31-307a or (2) the average weekly wage earned by the claimant during the twenty-six calendar weeks last worked by the claimant, which wage shall be determined in accordance with said section 31-310 and adjusted pursuant to said section 31-307a."

[8] The review board made other findings not at issue in this appeal.

(1990); *Imbrogno* v. *Stamford Hospital*, 28 Conn. App. 113, 118, 612 A.2d 82, cert. denied, 223 Conn. 920, 614 A.2d 82 (1992). . . . *Black* v. *London & Egazarian Associates, Inc.*, 30 Conn. App. 295, 299–300, 620 A.2d 176, cert. denied, 225 Conn. 916, 623 A.2d 1024 (1993)." (Internal quotation marks omitted.) *Chute* v. *Mobil Shipping & Transportation Co.*, 32 Conn. App. 16, 18–19, 627 A.2d 956, cert. denied, 227 Conn. 919, 632 A.2d 688 (1993). We conclude that the commissioner and the review board have misconstrued the law applicable to this case and improperly awarded dependent's death benefits to the plaintiff.

The dependent's death benefits statute applicable to the plaintiff's claim is General Statutes (Rev. to 1989) § 31-306 (b) (2). That statute provides for payment of benefits based on the average weekly earnings of the deceased at the time of injury, and provides that in the case of an occupational disease, the time of injury is determined by the date of incapacity to work.[9] That statute provides in pertinent part: "Compensation shall be paid on account of death resulting from an accident arising out of and in the course of employment or from an occupational disease as follows . . . To those wholly dependent upon the deceased employee at the time of his injury, a weekly compensation equal to *sixty-six and two-thirds per cent of the average weekly earnings of the deceased at the time of injury*," subject to statutory limitations. (Emphasis added.) Furthermore, that statute provides that "[i]n the case of an occupational disease, *the time of injury shall be the date of total or partial incapacity to work as a result of such disease.* . . ."[10] (Emphasis added.)

In this case, the "average weekly earnings of the deceased at the time of injury" is calculated pursuant

[9] See footnote 4.

[10] The parties do not dispute the commissioner's finding that the effective time of injury/date of incapacity here is July 11, 1989.

to a formula set out in General Statutes (Rev. to 1989) § 31-310, which provides that "the average weekly wage shall be ascertained by dividing the total wages received by the injured worker from the employer in whose service he is injured *during the twenty-six calendar weeks immediately preceding that during which he was injured,* by the number of calendar weeks during which, or any portion of which, such worker was actually employed by such employer . . . ." (Emphasis added.)[11]

Our Supreme Court reviewed a former version of § 31-310[12] in *Rousu* v. *Collins Co.*, 114 Conn. 24, 30–32, 157 A. 264 (1931), and concluded that the calculation of average weekly earnings pursuant to that statute should be based on the *earnings received at the time*

[11] The review board, in upholding the commissioner's determination that the plaintiff was entitled to dependent's death benefits based on the decedent's average weekly earnings during his last twenty-six weeks of employment with Electric Boat in 1978, relied on General Statutes (Rev. to 1991) § 31-310c. See footnote 7. That statute, enacted as Public Acts 1990, No. 90-16, § 8, became effective on October 1, 1990, subsequent to the decedent's date of incapacity, and addresses the method of calculating the average weekly wage of a worker with an occupational disease. The dissent posits that § 31-310c should be applied retroactively because it is a codification of administrative law as it existed at the time of the statute's passage. We disagree. "Our Supreme Court has clearly indicated that new workers' compensation legislation affecting rights and obligations as between the parties, and not specifying otherwise, applie[s] only to those persons who received injuries after the legislation became effective, and not to those injured previously." (Internal quotation marks omitted.) *Roswell* v. *State,* 29 Conn. App. 432, 434–35, 615 A.2d 1063, cert. denied, 224 Conn. 992, 618 A.2d 529 (1992). We conclude, therefore, that because § 31-310c took effect after the decedent's date of incapacity and affects the rights and obligations of parties to a workers' compensation claim, § 31-310c does not apply to this case. We also conclude that § 31-310c does not apply to dependent's death benefits claims arising after October 1, 1990, because the current statute governing dependent's death benefits, General Statutes (Rev. to 1995) § 31-306, does not refer to *§ 31-310c,* but, rather, specifically provides that the formula set out in *§ 31-310* should be used to calculate such benefits.

[12] The statute was formerly codified as § 5238. The relevant portion of § 5238 in *Rousu* differs only insignificantly from the portion of § 31-310 relevant here.

*of incapacity.* The court stated: "There can be no compensation without incapacity. Compensation under our Act is based upon incapacity, total or partial, and hence is based upon loss of earning power. . . . The just measure of the value of the earning power of an employee and the correlative loss incurred by him would seem to relate to his *earnings at the time the loss occurs through incapacity to work,* rather than his earnings at an earlier time, perhaps so remote that, through changing conditions, personal or industrial, or both, his earnings at that time no longer accurately or correctly reflect the present value of the earning power of the workman." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 31. In addition, the court "regard[ed] it as unreasonable that the General Assembly intended otherwise than that *loss of earnings should be ascertained on the basis of the average for the specified period preceding the date when the state of facts arose which first entitled the plaintiff to compensation, that is, the incapacity.*" (Emphasis added; internal quotation marks omitted.) Id., 32.

The Supreme Court followed the *Rousu* holding in *Michna* v. *Collins Co.,* 116 Conn. 193, 197–200, 164 A. 502 (1933). In *Michna,* the court explained: "[T]he basis of [the plaintiff's] compensation should be his *average weekly earnings at the time when his incapacity occurred* . . . ascertained under the provisions of [the statute]. . . . The basis of ascertainment of average weekly wage, in accordance with [the statute] . . . is *the wages received from the employer in whose service the plaintiff was at the time his incapacity occurred* . . . ." (Emphasis added.) Id., 200.

We examined both *Rousu* and *Michna* in *Stevens* v. *Raymark Corp./Raybestos Manhattan,* 28 Conn. App. 226, 228, 610 A.2d 710, cert. denied, 223 Conn. 921, 614 A.2d 830 (1992), and reiterated that "[t]he applicable case law provides that the relevant date for determining

compensation to an injured worker is the *date of his incapacity to work . . . .*" (Emphasis added.) We further concluded that "the plaintiff's benefits should be calculated on the basis of his *wages on the date of his incapacity to work . . . .*" (Emphasis added.) Id., 229–30.

In *Mulligan* v. *F. S. Electric*, 231 Conn. 529, 540–43, 651 A.2d 254 (1994), our Supreme Court reviewed General Statutes (Rev. to 1989) § 31-310, *Rousu, Michna* and *Stevens.* The court upheld the longstanding rule that the wages referred to in § 31-310 are those wages that the employee earned during the twenty-six weeks preceding the *date of incapacity. Mulligan* v. *F. S. Electric,* supra, 540. The court also noted: "[I]n both *Rousu* and *Michna,* computation of benefits based on the date of incapacity . . . resulted in lower benefits to the claimant. The rule in *Rousu* is neutral in its application and can result in lower benefits, as in those cases, or higher benefits, as the claimant argues for in this case." Id., 541 n.6.

Thus, it is clear from our law that the "average weekly wage" calculated pursuant to General Statutes (Rev. to 1989) § 31-310 is to be based on the wages earned by the employee during the twenty-six weeks immediately preceding the date of the employee's incapacity. Here, however, the decedent earned no wages during the twenty-six weeks immediately preceding the date of his incapacity,[13] and, as a result, he earned no "average weekly wage" pursuant to § 31-310. Thus, because the decedent earned no "average weekly wage," and because such a wage is required for a calculation of dependent's death benefits pursuant to § 31-306, we conclude that the plaintiff is not entitled to such benefits.[14]

[13] Neither party claims that the decedent's social security benefits qualify as wages.

[14] The dissent relies on *Orcott* v. *Ohmweave Co.,* 8 Conn. Workers' Comp. Rev. Op. 125 (1990), and *Deremer* v. *General Dynamics Corp.,* 11 Conn.

The decision of the compensation review board is reversed and the case is remanded with direction to deny the plaintiff's claim for benefits.

In this opinion FOTI, LANDAU and HENNESSY, Js., concurred.

DUPONT, C. J., with whom LAVERY and SPEAR, Js., join, dissenting. The majority concludes that the plaintiff is not entitled to dependent's benefits under the Workers' Compensation Act because her decedent had no wages during the twenty-six weeks preceding the date of his total or partial incapacity to work as a result of an occupational disease. We conclude that the plaintiff, as the decedent's spouse and dependent, is so entitled. We would apply General Statutes § 31-310c (2) retroactively because it is a codification of administrative law as it existed at the time of the statute's passage. Accordingly, we respectfully dissent.

General Statutes (Rev. to 1991) § 31-310c provides in pertinent part that "in the case of an occupational disease which manifests itself at a time when the worker has not worked during the twenty-six weeks immediately preceding the diagnosis of such disease, the claimant's average weekly wage shall be considered to be equivalent to . . . (2) the average weekly wage earned by the claimant during the twenty-six calendar weeks last worked by the claimant, which wage shall be deter-

Workers' Comp. Rev. Op. 317 (1993). These two prior decisions of the review board use the formula subsequently set out in General Statutes § 31-310c to calculate dependent's death benefits, namely the average weekly wage earned by the claimant during his last twenty six weeks of employment for the employer in whose employ the disease was contracted. We disagree. We conclude that as *Orcott* and *Deremer* do not accurately reflect the proper method of calculating benefits pursuant to General Statutes (Rev. to 1989) § 31-310, those decisions should not be relied upon by claimants, the commissioner or the review board in future cases. See footnote 11.

mined in accordance with . . . section 31-310 and adjusted pursuant to . . . section 31-307a."[1]

It is not disputed that the date of the total or partial incapacity to work of the decedent was in July, 1989 or that he last worked at General Dynamics, Electric Boat Division, on June 17, 1978, at which time he retired for reasons unrelated to injury or disease. The review board awarded the plaintiff benefits pursuant to § 31-306, which is entitled "Death resulting from accident or occupational disease. Dependents. Compensation." The benefits were based on the decedent's final twenty-six weeks of employment at Electric Boat, subject to § 307 (a), which establishes a maximum statutory benefit rate. The review board applied § 310c (2) retroactively, relying on its prior decisions in *Orcutt* v. *Ohmweave Co.*, 8 Conn. Workers' Comp. Rev. Op. 125 (1990), and *Deremer* v. *General Dynamics Corp.*, 11 Conn. Workers' Comp. Rev. Op. 317 (1993), and was aware that the statute did not become effective until October 1, 1990, a date subsequent to the date of the plaintiff's decedent's incapacity to work. The review board stated in its decision that its holding was consistent with previous decisions of the board "that have established that a retiree is entitled to collect compensation for injuries resulting from occupational diseases that manifest themselves after retirement."[2]

Before discussing those situations in which legislation is appropriately applied retroactively, we emphasize that this case arises under the Workers' Compensation Act. "The act is to be broadly construed to effectuate the purpose of providing compensation 'for an injury arising out of and in the course of the

---

[1] The statute was amended to provide for a period of fifty-two weeks, effective July 1, 1993. Public Acts 1993, No. 93-228.

[2] The review board specifically stated that it was not applying § 31-310c (1) because that portion of the statute was not the subject of its previous decisions.

employment regardless of fault.' . . . Under typical workers' compensation statutes, employers are barred from presenting certain defenses to the claim for compensation, the employee's burden of proof is relatively light, and recovery should be expeditious. In a word, these statutes compromise an employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation. . . . The purposes of the act itself are best served by allowing the remedial legislation a reasonable sphere of operation considering those purposes." (Citations omitted.) *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 97, 491 A.2d 368 (1985).

In *Orcutt*, one of the cases on which the board relied in its decision, the date the occupational disease was diagnosed, namely, the date of the employee's incapacity to work, was in December, 1983. The disease had been contracted between 1962 and 1979. The claim was made in 1985, prior to the date of the passage of § 31-310 (c). As of the time of the employee's incapacity to work, he had not worked for the preceding twenty-six weeks. The average weekly wage used in the calculation of benefits by the board was the same as that subsequently made law by § 31-310 (c) (2), namely, the average weekly wage earned by the claimant during his last twenty-six weeks of employment in 1979 while working for the employer in whose employ the disease was contracted.

A valid and final adjudication of an administrative body has the same effect as a final adjudication of a court and is subject to the same exceptions and qualifications as a judicial decision if it is not appealed or overruled. 2 Restatement (Second), Judgments § 83 (1982); see *Convalescent Center of Bloomfield, Inc.* v. *Dept. of Income Maintenance*, 208 Conn. 187, 544 A. 2d 604 (1988); *Busconi* v. *Dighello*, 39 Conn. App. 753, 768, 668 A. 2d 716 (1995), cert. denied, 236 Conn. 903,

670 A.2d 321 (1996). A crucial test for the vitality of an administrative decision for the purpose of testing whether it should be equated with a judicial decision is whether there was access to judicial review of the administrative decision. The decision of "a valid and final adjudicative tribunal has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court." 2 Restatement (Second), Judgments § 83 (1) (1982). The decision in *Orcutt* was not subjected to judicial review because it was not sought, although such review was available. The decision, therefore, just as a judicial decision, remained a binding interpretation of existing administrative law until such time that a judicial decision or the legislature decided to the contrary. The legislature subsequently did, in fact, speak on the subject, but not to the contrary. Instead, it passed legislation in accord with *Orcutt*. The legislature made it clear that a person who develops a manifestation of an occupational disease after retiring will not be denied compensation on the ground that he or she is no longer working and has not had wages for a requisite number of weeks. In other words, the legislature affirmed or codified a prior decision of the administrative body charged with the enforcement and administration of the Workers' Compensation Act.

Due deference should be given to the review board's interpretation of the statutes it enforces. *Carriero* v. *Naugatuck*, 43 Conn. App. 773, 685 A.2d 1141 (1996). "Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . ." *State Board of Labor Relations* v. *Freedom of Information Commission*, 43 Conn. App. 133, 137–38, 682 A.2d 1068 (1996), citing *Griffin Hospital* v. *Commission on Hospitals & Health Care*, 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986).

The legislature in the passage of § 31-310c (2) gave effect to the board's interpretation of prior law, and we should, therefore, interpret it as being retrospectively intended. A retrospective application of § 31-310c (2) does not change the expectations of employers or employees, and comports with existing decisions of the review board that were not appealed.

Courts are free to determine the extent to which decisions will have a retrospective effect. *Neyland* v. *Board of Education*, 195 Conn. 174, 179, 487 A.2d 181 (1985). Because administrative decisions have the same efficacy as judicial decisions in situations such as the one here, until changed by later judicial decisions or the legislature, courts are free to determine which administrative decisions should be given retrospective effect. The legislature can amend a statute to give rights that the courts have interpreted as being conferred by a statute. *Reliance Ins. Co.* v. *American Casualty Ins. Co. of Reading Pennsylvania*, 238 Conn. 285, 679 A.2d 925 (1996); *State* v. *Blasko*, 202 Conn. 541, 522 A.2d 753 (1987). When the administrative body charged with the administration of a particular statute has interpreted that statute, there is no reason why the legislature cannot likewise amend the statute to give the rights the administrative body thought appropriate.