[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (#111)
This is an action in the nature of an interpleader by the plaintiff State of Connecticut's Department of Administrative Services, acting through its Bureau of Collection Services (known as Fiscal Administrative Resources — Collections) (hereinafter plaintiff or state), to enforce a statutory lien for public assistance rendered by the plaintiff to the minor child of the defendant John Burnaka. The defendant Prescott W. May, an attorney, is the holder of certain funds which are the proceeds of a personal injury settlement achieved by him for Burnaka.
The plaintiff now moves for summary judgment to enforce its lien, claiming that there is no genuine issue of material fact as to the validity of its lien or the amount due and payable. CT Page 559
For the reasons stated below, the motion for summary judgment is granted on the issue of liability.
 I. Factual and Procedural Background
The plaintiff filed this interpleader action against the defendant May, an attorney, who holds the sum of $10,308.72, the balance remaining of the defendant Burnaka's personal injury settlement, after all costs, fees, and a portion of the proceeds was paid over to Burnaka. Burnaka has refused to authorize May, his attorney, to pay said balance over to the plaintiff.
Burnaka commenced an action in tort for personal injuries in 1994. The plaintiff, upon knowledge of this action, notified the defendants of its claim for repayment of the AFDC public assistance provided to Burnaka's minor child and its statutory lien on the net proceeds of Burnaka's lawsuit. See General Statutes §§ 17b-93 and 17b-94. The plain effect of the two statutes is that the state has a right to reimbursement for the public assistance [paid], and a statutory lien on a cause of action such as Burnaka's "in the amount of the assistance paid or fifty percent of the proceeds received by such beneficiary or such parent after payment of all expenses connected with the cause of action, whichever is less. . . ." General Statutes §17b-94.
Burnaka contested the validity and amount of the plaintiff's statutory lien at an administrative hearing held by the plaintiff's Department of Social Services' Office of Administrative Hearings. See General Statutes § 17b-60. The Fair Hearing Officer (FHO), after a full hearing, at which the parties examined and cross-examined witnesses and introduced documentary evidence, issued a Notice of Decision in which he found the plaintiff's lien to be in the amount of $10,308.72, valid, and enforceable. Burnaka had a right to appeal the decision under § 4-183 of the Uniform Administrative Procedures Act, filed an appeal, and then withdrew it.
Burnaka resolved his personal injury action for the sum of $89,500; the net proceeds after deduction for costs of suit, attorney's fees, medical bills and a `no-fault' lien equaled $51,831.48, of which $41,522.76 was disbursed to Burnaka, which left the $10,308.72 held by May to cover the plaintiff's lien. As the amount of the lien is less than fifty percent ($25,915.74) of the net proceeds of Burnaka's recovery of $51,831.48, the CT Page 560 plaintiff claims it is entitled to full payment of its lien.
Burnaka basically claims that he entered into a settlement agreement in 1994 with the state which absolved him from any past and future liability for public assistance payments to his daughter. He further claims that as the FHO had no authority to enforce his settlement agreement, he could not adequately raise this issue before the FHO, and therefore, he asserts that the FHO's decision upholding the lien does not preclude him from raising the issue in this case.
 II. Standards for Summary Judgment
Practice Book § 17-49 requires that "[t]he judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . . While the burden of showing the non-existence of any material fact is on the party seeking summary judgment; the party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . .
To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts in accordance with Practice Book (1998 Rev.) §§ 17-45 and 17-46, which contradict those stated in the movant's affidavits and documents and show that there is a genuine issue for trial. If he does not so respond, summary judgment shall be entered against him." (Citations omitted; internal quotation marks omitted.) Hryniewicz v. Wilson,51 Conn. App. 440, 443-44, ___ A.2d ___ (1999).
 III. Discussion
The "agreement" Burnaka relies upon to insulate him from the plaintiff's claim had its genesis in the course of a child support modification hearing on July 31, 1994 before a family support magistrate. Prior to that proceeding, Burnaka was ordered to pay $65 per week as child support for his minor daughter. Burnaka and the state were represented by counsel and CT Page 561 representatives of the Department of Social Services were present. The magistrate modified the support order from $65 per week to zero, and determined that there was no arrearage due the state as of June 14, 1994. The magistrate also found that "[Burnaka] and his counsel entered into an agreement with the state of Connecticut that the current support order should be modified and that the arrearage claimed by the [state] should be vacated as [Burnaka] has proved that it has already been collected by the State of Connecticut."
Although Burnaka's affidavit asserts that "[t]his agreement was designed to discharge me from any liability owed to the State of Connecticut, including future welfare liability under C.G.S.17b-93 and 17b-94," (emphasis added) he puts forth no evidence supporting this claim, other than his conclusory statement.
Despite his present assertion that the FHO had no authority to consider the validity of the agreement, Burnaka raised this precise issue in the administrative hearing. The FHO dealt with it as follows in his Notice of Decision:
"Burnaka's representative has argued that based on the August 2, 1994[1] modification, [Burnaka] no longer had any liability for repaying the state for public assistance given to his daughter. He has presented no evidence to support this claim. The submitted court document only addresses his child support order obligations, and does not address his liability to the state for assistance given to his daughter. His child support obligation and his obligation to repay the state for assistance given his daughter are two very different matters. There is nothing included in § 17b-93 that limits a parent's obligation only to the amount of the court ordered child support. As the parent of a child on assistance, he is liable for the full public assistance given to his child. . . , regardless of the amount of the support order. The state has the statutory authority to place a lien on [Burnaka's] cause of action."
It is well settled that the doctrines of res judicata and collateral estoppel apply to a decision by an administrative tribunal. The governing rule is that "a valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of the court." (Internal quotation marks omitted.) New England RehabilitationHospital of Hartford, Inc. v. CHHC, 226 Conn. 105, 129, CT Page 562627 A.2d 1257 (1993). "A crucial test for the vitality of an administrative decision for the purpose of testing whether it should be equated with a judicial decision is whether there was access to judicial review of the administrative decision." Greenv. General Dynamics Corp. , 44 Conn. App. 112, 122-23,687 A.2d 550 (1996), reversed on other grounds, 245 Conn. 66, ___ A.2d ___ (1998). While Burnaka did seek judicial review of the FHO's decision, he withdrew his appeal. Therefore, the opportunity for such review was clearly available to him. Accordingly, I conclude that the FHO's decision is a valid final judgment, and the doctrines of res judicata and collateral estoppel are applicable.
"[U]nder the doctrine of res judicata, or claim preclusion, a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim [or anyclaim based on the same operative facts that] might have been made. . . . [T]he appropriate inquiry with respect to [claim] preclusion is whether the party had an adequate opportunity to litigate the matter in the earlier proceeding. . . ." (Citations omitted; emphasis added; internal quotation marks omitted.)Connecticut National Bank v. Rytman, 241 Conn. 24, 43,694 A.2d 1246 (1997).
"A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose. . . . The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it." (Citations omitted; internal quotation marks omitted.) Delahunty v. MassachusettsMutual Life Ins. Co., 236 Conn. 582, 589, 674 A.2d 1290 (1996). The doctrine of res judicata is "based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate." Id., 591.
In applying this test to the case at hand, it becomes necessary to determine whether there was a former judgment on the merits between the same parties. "A judgment on the merits is one which is based on legal rights as distinguished from mere matters of practice, procedure, jurisdiction or form. . . . A decision with respect to the rights and liabilities of the parties is on the merits where it is based on the ultimate fact or state of facts disclosed by the pleadings or evidence, or both, and on which the right of recovery depends." Rosenfield v. Cymbala,43 Conn. App. 83, 91-92, 681 A.2d 999 (1996). CT Page 563
Both the action before the FHO and the present action involve the same plaintiff, and the same defendant, Burnaka. In the prior action, the FHO concluded that the plaintiff's lien was valid and in the amount of $10,308.72. He further found that the plaintiff is entitled to place the lien on Burnaka's cause of action and recover the AFDC payment. The FHO also concluded that Burnaka failed to provide evidence to support his claim of an agreement with the state that he no longer had any liability to repay the state for public assistance given his daughter. Because this decision is based upon the legal rights of Burnaka and upon which his defense depends, it is evident that the FHO's decision constitutes a former judgment on the merits between the same parties.
The next consideration is whether the later action involves the same claim. "[The Connecticut Supreme Court has] adopted a transactional test as a guide to determining whether an action involves the same claim as an earlier action so as to trigger operation of the doctrine of res judicata." Brown v. Commissionerof Correction, 44 Conn. App. 746, 749, 692 A.2d 1285 (1997). In applying the transactional test, [the court compares] the complaint in the second action with the pleadings and the judgment in the earlier action." Id. A comparison of the complaint in this action with the proceedings and decision in the prior administrative action reveals that Burnaka's claims in both involve the same operative facts, and are essentially the same.
Finally, it is necessary to determine whether Burnaka had an adequate opportunity to litigate this claim in the prior proceeding. Because the FHO conducted a hearing, in which the parties were given the opportunity to present and cross-examine witnesses, documentary evidence, oral arguments and briefs, and because Burnaka had the opportunity to seek judicial review of the FHO's decision, I conclude that Burnaka had an adequate opportunity to litigate his "settlement agreement" defense in the prior proceeding.
Accordingly, because the prior action involved the same parties, resulted in a final judgment on the merits, involved the same claim, and because Burnaka was given an adequate opportunity to litigate his defense, I conclude that his settlement agreement defense is barred under the doctrine of res judicata.
Even if res judicata is not applicable, Burnaka's mere CT Page 564 assertion of the `settlement agreement' does not raise a genuine issue of material fact. Morever, Burnaka has provided no evidence whatsoever, apart from his conclusory affidavit, that the `settlement agreement' released him from future liability.
The plaintiff has shown by affidavit that it rendered assistance on behalf of the defendant's minor daughter from and after July 31, 1994 through February 1, 1997 in the amount of $13,882. The plaintiff has also shown by affidavit that no payments or other credits were made on this amount. Burnaka has not provided any countervailing proof of payment or credits toward his debt.
The FHO determined, after a full hearing, that the plaintiff's statutory lien on Burnaka's personal injury recovery was $10,308.72. On its face the "settlement agreement" cannot be construed to discharge the defendant from future liability for support or assistance to his minor child.
Accordingly, the plaintiff is entitled to judgment as a matter of law on the validity and amount of its lien.
 Conclusion
Simply put, the statutory scheme stated in § 17-93 is clear and unambiguous and "gives the state the right to pursue an action for the repayment of total AFDC assistance." State ofConnecticut v. Julian, Superior Court, judicial district of Waterbury, Docket No. 067863, (May 24, 1984). Section 17-94 also clearly and unambiguously provides that the state shall have a lien against the proceeds of a parent's cause of action limited to the amount of the assistance paid on behalf of the parent's child or fifty percent of the net proceeds of the recovery, whichever is lesser.
The plaintiff has sufficiently demonstrated that it provided assistance to the defendant Burnaka's minor child in the amount of $13,882 after June 14, 1994, the effective date of the support order modification and `settlement agreement' relied on by Burnaka. Burnaka does not contest the amount nor does he claim payment or other credits or setoffs due him.
Therefore, as stated, the state has established, as a matter of law, that the lien is valid, and that the sum of $10,308.72 is due and payable to it. CT Page 565
Although the plaintiff commenced this interpleader action pursuant to General Statutes § 52-484, an interlocutory judgment of interpleader has not been entered. "The interlocutory judgment of interpleader determines the propriety of the interpleader procedure. Until the interlocutory judgment of interpleader has been rendered, there can be no trial on the merits of the interpleader proceeding." Yankee Mill Work Sash Door Co. v. Bienkowski, 43 Conn. App. 471, 474, 683 A.2d 743
(1996); Practice Book § 23-44.
It should also be pointed out that while both defendants filed answers to the plaintiff's complaint, neither filed claims to the fund. Moreover, the defendant May did not file a disclaimer or pay the fund into court.
If the parties had consistently presented the case on the interpleader theory, the court would have disposed of it similarly, and disregarded "as did they, certain technical, procedural problems and irregularities." See Cruz v. Zaboori,14 Conn. App. 457, 463, 541 A.2d 531 (1988). However, that is not the case here, as there was no trial, and therefore the court declines to address the plaintiff's claim of attorney's fees.
Accordingly, the state's motion for summary judgment is granted, and judgment shall enter for the plaintiff on liability, and further proceedings shall be had to determine the nature of the specific relief to be awarded.
Teller, J.