******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# JOHN COUGHLIN *v.* STAMFORD FIRE DEPARTMENT ET AL.
## (SC 20319)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.

*Syllabus*

The named defendant, the Stamford Fire Department, appealed from the decision of the Compensation Review Board, which reversed the decision of the Workers' Compensation Commissioner denying the plaintiff's claim for benefits under the statute (§ 7-433c) governing compensation for municipal police officers or firefighters with hypertension or heart disease. While employed as a firefighter, the plaintiff filed a claim for hypertension benefits pursuant to § 7-433c. The plaintiff subsequently retired, and the commissioner issued a finding and award, concluding that the plaintiff's hypertension claim was compensable. Shortly thereafter, D, the plaintiff's physician, issued a report assigning a permanent partial disability rating of the heart for the plaintiff's hypertension, which was acknowledged in a subsequent stipulated finding and award, and D, in that report and a supplemental report, diagnosed the plaintiff with coronary artery disease. D concluded that the plaintiff's hypertension was a significant factor in the development of his coronary artery disease. The plaintiff then pursued compensation for his coronary artery disease, claiming that it flowed from his initial hypertension claim. Following a hearing, the commissioner found that the plaintiff was neither diagnosed with nor filed a claim under § 7-433c for coronary artery disease until after he had retired. The commissioner concluded that the plaintiff did not suffer from coronary artery disease or the resulting disability while he was on or off duty as a regular member of a municipal fire department and that D's opinion that the plaintiff was developing coronary artery disease while he was employed as a firefighter was not sufficient to render the claim compensable under § 7-433c. Accordingly, the commissioner dismissed the plaintiff's claim for benefits related to his coronary artery disease. The plaintiff appealed from that decision to the board, which reversed the commissioner's decision and remanded the case for further proceedings. The board concluded that, on the basis of D's unchallenged medical reports, it was reasonable to infer that the plaintiff's coronary artery disease was the sequela of his compensable claim for hypertension and that a cardiac event that occurs subsequent to an initial injury that is compensable under § 7-433c is not necessarily a new injury that would require the filing of a new notice of claim. On the defendant's appeal from the board's decision, *held* that the defendant could not prevail on its claim that the plaintiff was not entitled to benefits under § 7-433c for his coronary artery disease insofar as he was not diagnosed with such disease until after he retired from his position as a firefighter and as his coronary artery disease was a separate and distinct injury from his hypertension: a claim for heart disease that occurs after an initial, compensable claim for hypertension under § 7-433c may qualify for benefits without the need to file a notice of new claim, as long as there is a causal connection between the two injuries or conditions, and a claimant may pursue such a claim for heart disease even after retirement, as long as causation between the injury or condition that formed the basis for the initial, compensable claim and the subsequent heart disease is established; accordingly, because it was undisputed that the plaintiff's initial claim for hypertension was timely and compensable under § 7-433c, and because the record contained unchallenged medical reports in which R concluded that the plaintiff's hypertension was a significant factor in the development of his coronary artery disease, the evidence was sufficient to uphold the board's conclusion that the plaintiff was entitled to compensation for his coronary artery disease under § 7-433c.

Argued November 12, 2019—officially released March 10, 2020

*Procedural History*

Appeal from the decision of the Workers' Compensation Commissioner for the Seventh District dismissing the plaintiff's claim for certain workers' compensation benefits, brought to the Compensation Review Board, which reversed the commissioner's decision and remanded the case for further proceedings, and the defendants appealed. *Affirmed.*

*Scott Wilson Williams*, for the appellants (defendants).

*Andrew J. Morrissey*, for the appellee (plaintiff).

*Opinion*

KAHN, J. The named defendant, the Stamford Fire Department,[1] appeals[2] from the decision of the Compensation Review Board (board), which reversed the decision of the Workers' Compensation Commissioner for the Seventh District (commissioner) denying benefits to the plaintiff, John Coughlin, pursuant to General Statutes § 7-433c (a).[3] *Coughlin* v. *Stamford Fire Dept.*, No. 6218, CRB 5-17-9 (February 15, 2019). On appeal, the defendant asserts that the board incorrectly determined that the plaintiff's heart disease claim was timely because, at the time of his diagnosis and disability, the plaintiff had retired as a firefighter and was no longer employed by the defendant. Additionally, the defendant asserts that a claim for a new injury of heart disease cannot be established on the basis of its causal relationship to the plaintiff's initial compensable claim for hypertension because § 7-433c mandates that hypertension and heart disease be treated as separate and distinct injuries. The plaintiff responds that his heart disease claim was timely because it flowed from his compensable claim for hypertension, and neither a plain reading of § 7-433c nor this court's interpretation of that statute requires hypertension and heart disease to be treated as separate diseases when they are causally related. We agree with the plaintiff and, accordingly, affirm the decision of the board.

The record reveals the following undisputed facts and procedural history. The plaintiff was hired by the defendant as a regular member of its fire department on November 26, 1975.[4] While employed as a firefighter, the plaintiff filed a claim for hypertension benefits pursuant to § 7-433c based on a January 28, 2011 date of injury. The plaintiff retired from his position as a firefighter on April 5, 2013, based on his years of service. On March, 22, 2016, the commissioner issued a finding and award, concluding that the plaintiff's claim for hypertension was compensable. Following that finding and award, Donald Rocklin, the plaintiff's physician, issued a report dated May 21, 2016, that assigned a 6 percent permanent partial disability rating of the heart for the plaintiff's hypertension, which was acknowledged in a subsequent stipulated finding and award dated August 20, 2016. In addition, both Rocklin's May 21, 2016 report and supplemental report dated June 29, 2016, diagnosed the plaintiff with coronary artery disease. In those reports, Rocklin concluded that the plaintiff's hypertension was a significant factor in the development of his coronary artery disease. The plaintiff then pursued compensation for his coronary artery disease, claiming that it flowed from his January 28, 2011 hypertension claim.

Following a hearing on the heart disease claim, the commissioner found that the plaintiff was neither diagnosed with coronary artery disease nor filed a claim

for that disease under § 7-433c until after he had retired. Citing our decision in *Holston* v. *New Haven Police Dept.*, 323 Conn. 607, 149 A.3d 165 (2016), and the Appellate Court's decision in *Staurovsky* v. *Milford Police Dept.*, 164 Conn. App. 182, 134 A.3d 1263 (2016), appeal dismissed, 324 Conn. 693, 154 A.3d 525 (2017), the commissioner concluded that the plaintiff's coronary artery disease and resulting disability were not suffered while the plaintiff was on or off duty as a regular member of a municipal fire department. Furthermore, the commissioner concluded that Rocklin's opinion that the plaintiff was developing coronary artery disease while he was employed by the defendant was not sufficient to make the claim compensable under § 7-433c. Accordingly, on September 7, 2017, the commissioner issued a finding and dismissal as to the plaintiff's claim for benefits related to his heart disease. The plaintiff then appealed from that decision to the board.

In accordance with its decision in *Dickerson* v. *Stamford*, No. 6215, CRB 7-17-8 (September 12, 2018), the board stated that it did not believe that "a cardiac event that occurred at a later date from an initial compensable injury [pursuant to § 7-433c] *must*, as a matter of law, be deemed a new injury." (Emphasis in original; internal quotation marks omitted.) The board observed that "benefits pursuant to § 7-433c claims are to be awarded in the same amount and the same manner as that provided under [the Workers' Compensation Act (act), General Statutes § 31-275 et seq.]," and "[w]ere the [plaintiff] to have sustained the sequelae of a compensable injury under [the act], he would not be expected to file a new notice of claim." (Internal quotation marks omitted.) On the basis of the unchallenged medical reports from Rocklin concluding that the plaintiff's hypertension was a significant factor in the development of his coronary artery disease, the board concluded that it was reasonable to infer that the plaintiff's coronary artery disease was the sequela of his accepted § 7-433c claim for hypertension. Accordingly, the board reversed the decision of the commissioner and remanded the case for further proceedings. This appeal followed.

"The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . [Moreover, it] is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and [the] board. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally

or in abuse of its discretion. . . . We have determined, therefore, that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . ." (Footnote omitted; internal quotation marks omitted.) *Holston* v. *New Haven Police Dept.*, supra, 323 Conn. 611–13. In addition, "we are mindful of the proposition that all workers' compensation legislation, because of its remedial nature, should be broadly construed in favor of disabled employees. . . . This proposition applies as well to the provisions of [§] 7-433c . . . because the measurement of the benefits to which a § 7-433c claimant is entitled is identical to the benefits that may be awarded to a [claimant] under . . . [the act]. . . . We also recognize, however, that the filing of a timely notice of claim is a condition precedent to liability and a jurisdictional requirement that cannot be waived." (Internal quotation marks omitted.) Id., 613.

"The plain language of § 7-433c demonstrates that a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department is entitled to benefits under the statute when the officer meets the following requirements: (1) has passed a preemployment physical; (2) the preemployment physical failed to reveal any evidence of hypertension or heart disease; (3) suffers either off duty or on duty any condition or impairment of health; (4) the condition or impairment of health was caused by hypertension or heart disease; and (5) the condition or impairment results in his death or his temporary or permanent, total or partial disability. The statute contains no other requirements to qualify for its benefits." Id., 616–17. "It is settled that, because . . . § 7-433c (a) does not set forth a limitation period for filing a claim but provides for the administration of benefits 'in the same amount and the same manner as that provided under [the act] if such death or disability was caused by a personal injury which arose out of and in the course of his employment,' the one year limitation period of [General Statutes] § 31-294c (a) governs claims filed under § 7-433c." *Ciarlelli* v. *Hamden*, 299 Conn. 265, 278, 8 A.3d 1093 (2010).

As the Appellate Court has previously recognized, § 7-433c was intended to "eliminate two of the basic requirements for coverage under [the act], namely the causal connection between hypertension and heart disease and the employment, and the requirement that the illness was suffered during the course of employment." *Salmeri* v. *Dept. of Public Safety*, 70 Conn. App. 321, 331, 798 A.2d 481, cert. denied, 261 Conn. 919, 806 A.2d 1055 (2002). "More specifically, the legislature's intent was to afford the named occupations with a bonus by way of a rebuttable presumption of compensability

when, under the appropriate conditions, the employee suffered heart disease or hypertension." (Internal quotation marks omitted.) *Holston* v. *New Haven Police Dept.*, supra, 323 Conn. 617.

This is not the end of the inquiry, however, because § 7-433c applies only to the injured worker's establishment of a compensable claim in the first instance. "[O]nce § 7-433c coverage is established, the measurement of the plaintiff's benefits under this statute is identical to the benefits that may be awarded to a plaintiff under [the act]." *Felia* v. *Westport*, 214 Conn. 181, 185, 571 A.2d 89 (1990); see also *Lambert* v. *Bridgeport*, 204 Conn. 563, 566, 529 A.2d 184 (1987) ("§ 7-433c entitles a qualified, hypertensive or [heart disabled] firefighter or police officer to receive compensation and medical care equivalent to that available under [the act]"); *Salmeri* v. *Dept. of Public Safety*, supra, 70 Conn. App. 338–39 ("once the conditions of § 7-433c are met, benefits must be paid by the municipality in accordance with the [act]"). As a result, although there is no requirement that a claimant demonstrate that the initial injury was causally related to employment under § 7-433c, compensability of subsequent injuries flowing from that initial injury is assessed in accordance with the act.

Under the act, an employee, having suffered a compensable primary injury during the course of his employment, may also be compensated for a subsequent injury that occurs outside the course of employment when the subsequent injury is "the direct and natural result of a compensable primary injury." (Internal quotation marks omitted.) *Sapko* v. *State*, 305 Conn. 360, 380, 44 A.3d 827 (2012). In addition, the plaintiff's failure to comply with the notice provision under § 31-294c (a) will not bar a claim when the "late claimed condition was causally related to a timely reported incident for which the employer furnished medical care." *Carter* v. *Clinton*, 304 Conn. 571, 581, 41 A.3d 296 (2012). "Consequently, all the medical consequences and sequelae that flow from the primary injury are compensable"; *Sapko* v. *State*, supra, 381; so long as there exists the "requisite causal connection between the primary injury and the subsequent injury." Id., 386. It follows that a claim for a heart disease that occurred after an initial compensable claim for hypertension pursuant to § 7-433c may qualify for benefits without the need to file a new notice of claim, as long as there is a causal connection between the two injuries, as required by the act.

In interpreting the act, this court has previously noted that, "[u]nless causation under the facts is a matter of common knowledge, the plaintiff has the burden of introducing expert testimony to establish a causal link between the compensable workplace injury and the subsequent injury." Id. "When . . . it is unclear whether an employee's [subsequent injury] is causally

related to a compensable injury, it is necessary to rely on expert medical opinion. . . . Unless the medical testimony by itself establishes a causal relation, or unless it establishes a causal relation when it is considered along with other evidence, the commissioner cannot reasonably conclude that the [subsequent injury] is causally related to the employee's employment." (Citation omitted; internal quotation marks omitted.) *Marandino* v. *Prometheus Pharmacy*, 294 Conn. 564, 591–92, 986 A.2d 1023 (2010).

To illustrate the relationship between § 7-433c and the act, we offer the following examples, each of which assumes that the claimant was a firefighter or police officer employed by a paid municipal department whose employment began before July 1, 1996, and that he or she passed a preemployment physical that did not reveal any evidence of hypertension or heart disease. If such a claimant—while still employed—suffers a condition or impairment from hypertension or heart disease that results in a disability, that claimant may file a claim under § 7-433c.[5] If the claim is found to be compensable, that claimant may also be eligible for benefits related to a subsequent condition—including related heart disease—as long as the causation requirements set forth in the act are met. Cf. id.; *Hernandez* v. *Gerber Group*, 222 Conn. 78, 86, 608 A.2d 87 (1992). Such a claimant may pursue claims for subsequent, related injuries, regardless of whether he or she is still employed; the act does not require that sequelae be causally related to the claimant's employment directly, as long as a subsequent injury is causally related to a primary, compensable injury. See, e.g., *Marandino* v. *Prometheus Pharmacy*, supra, 294 Conn. 591–92; see also *Holston* v. *New Haven Police Dept.*, supra, 323 Conn. 617 (when requirements are met and compensable claim is established, § 7-443c creates rebuttable presumption that claimant's employment caused primary injury). To conclude, as the defendant suggests—that heart disease claims occurring after retirement are not compensable, even if such claims flow from a primary compensable claim—would run afoul of the clear legislative intent underlying § 7-433c.

The defendant cites *Holston* for the proposition that "the legislature intended for hypertension and heart disease to be treated as two separate diseases for the purposes of § 7-443c," and draws our attention to a particular footnote in that decision addressing causal relationships between injuries in the context of a new claim. See *Holston* v. *New Haven Police Dept.*, supra, 323 Conn. 616, 618 n.7. *Holston*, however, is factually distinguishable. In *Holston*, the plaintiff—who was employed as a municipal police officer when his claim was filed—was diagnosed with hypertension in October, 2009, and suffered a myocardial infarction on March 10, 2011. Id., 610. The plaintiff filed a claim for benefits on March 14, 2011, for both hypertension and

heart disease, which he claimed were causally related. Id., 610–11. It was undisputed on appeal to this court that the plaintiff's hypertension claim was untimely because he did not file it within one year of his diagnosis. Id., 614. This court held, however, that his failure to file a timely compensable claim for hypertension did not bar his subsequent claim for heart disease that was timely and met the requirements of § 7-433c.[6] Id., 616–17, 619. Unlike *Holston*, the present case does not involve the filing of a new claim for heart disease because the plaintiff established a compensable claim for hypertension while he was employed as a municipal firefighter.

Section 7-433c was intended to place "[police officers and firefighters] who die or are disabled as a result of hypertension or heart disease in the same position vis-à-vis compensation benefits as [police officers and firefighters] who die or are disabled as a result of service related injuries." (Internal quotation marks omitted.) *Staurovsky* v. *Milford Police Dept.*, supra, 164 Conn. App. 197. When § 7-433c is applied as set forth in this opinion, heart disease diagnosed after a claimant retires is compensable, regardless of whether that disease flows from an initial claim of hypertension brought under § 7-433c, or from an initial claim brought under the act (e.g., an injury suffered when responding to a fire). Such a construction effectuates the legislature's intent to provide firefighters and police officers with the same benefits under § 7-433c as they would have obtained under the act.

If a claimant, however, does not experience any condition or impairment of health related to hypertension or heart disease while employed as a firefighter or police officer and subsequently retires or otherwise leaves employment, then such postemployment claims of hypertension or heart disease are not compensable pursuant to § 7-433c. See id., 200–201 ("to qualify for benefits pursuant to § 7-433c, the claimant must establish the existence of a condition or impairment of health caused by hypertension or heart disease during [his or her period of employment], which results in the claimant's death or disability" (internal quotation marks omitted)). The rebuttable presumption that employment caused the claimant's hypertension or heart disease is clearly limited to claims filed while the claimant is employed as a municipal firefighter or police officer, thereby limiting the responsibility of the municipality.

Having clarified the relationship between § 7-433c and the act, we now turn to the defendant's claim that the plaintiff is not entitled to benefits related to his heart disease because (1) he was not diagnosed until after he retired and (2) his heart disease was a separate and distinct injury from his hypertension. In the present case, it is undisputed that the plaintiff's initial claim for hypertension met the five requirements of § 7-433c, was

timely, and was compensable. As a result, the plaintiff may submit claims for subsequent injuries that flow from his primary claim for hypertension pursuant to the requirements of the act. In addition, the evidentiary record contains unchallenged medical reports from a qualified expert, Rocklin, concluding that the plaintiff's hypertension was a significant factor in the development of his heart disease. Rocklin's reports, which were credited by both the commissioner and the board, provide a reasonable basis for the board's conclusion that the plaintiff's heart disease was the sequela of his hypertension, which was the injury at issue in his primary claim. This evidence is sufficient to uphold the board's conclusion that the plaintiff is entitled to compensation for his heart disease.

The decision of the Compensation Review Board is affirmed.

In this opinion the other justices concurred.

[1] PMA Management Corporation of New England, a third-party administrator for the city of Stamford, is a defendant in the present case and joined in this appeal. In the interest of simplicity, we refer to the Stamford Fire Department as the defendant throughout this opinion.

[2] The defendant appealed from the decision of the Compensation Review Board to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] General Statutes § 7-433c (a) provides: "Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependents, as the case may be, shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment. If successful passage of such a physical examination was, at the time of his employment, required as a condition for such employment, no proof or record of such examination shall be required as evidence in the maintenance of a claim under this section or under such municipal or state retirement systems. The benefits provided by this section shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568 or the municipal or state retirement system under which he is covered, except as provided by this section, as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability. As used in this section, 'municipal employer' has the same meaning as provided in section 7-467."

[4] Section 7-433c (b) provides in relevant part that "those persons who began employment on or after July 1, 1996, shall not be eligible for any benefits pursuant to this section." In the present case, it is undisputed that the plaintiff was hired on November 26, 1975.

[5] The claimant also could file a claim under the act if he or she could demonstrate a causal link between his or her hypertension or heart disease and his or her employment. See, e.g., *Solonick* v. *Electric Boat Corp.*, 111 Conn. App. 793, 799–800, 961 A.2d 470 (2008), cert. denied, 290 Conn. 916,

965 A.2d 555 (2009).

[6] In *Holston*, this court explained that, for purposes of establishing a new claim, the use of the disjunctive term "or" in § 7-433c when determining benefit eligibility for a claimant who suffers a disability caused by hypertension or heart disease "indicates that the legislature intended for hypertension and heart disease to be treated as two separate diseases . . . ." (Internal quotation marks omitted.) *Holston* v. *New Haven Police Dept.*, supra, 323 Conn. 616. This is true even if a previous diagnosis of hypertension—for which a claim was not sought or was untimely—is a significant factor leading to a subsequent diagnosis of a related heart condition for which a new claim is filed, as long as the five requirements set forth in § 7-433c are met and timely notice is given for the new claim. See id. ("[a]ccordingly, we conclude that the plain language of the statute demonstrates that the failure to file a timely claim for benefits related to hypertension does not bar a later timely claim for heart disease").