******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## STEPHEN T. COCHRAN *v*. DEPARTMENT OF TRANSPORTATION
### (SC 20940)

D'Auria, Mullins, Ecker, Alexander and Dannehy, Js.*

*Syllabus*

The plaintiff appealed, on the granting of certification, from the judgment of the Appellate Court, which had reversed the decision of the Compensation Review Board. The board had upheld an award of statutory (§ 31-307 (a)) total incapacity benefits to the plaintiff in connection with injuries that he sustained during the course of his employment with the defendant. The plaintiff claimed that the Appellate Court had incorrectly concluded that he was not eligible for total incapacity benefits because his total incapacity did not occur until after his voluntary retirement and because he did not intend to return to the workforce. *Held*:

This court concluded that, under the plain and unambiguous language of § 31-307 (a), a claimant who sustains a compensable workplace injury under the Workers' Compensation Act (§ 31-275 et seq.) is eligible to receive total incapacity benefits, regardless of whether the claimant's total incapacity occurs before or after his or her voluntary retirement from employment. Accordingly, this court reversed the Appellate Court's judgment and remanded the case to that court so that it could consider the defendant's alternative claim on appeal, which the Appellate Court did not reach in its decision.

Argued September 23—officially released December 24, 2024

*Procedural History*

Appeal from the decision of the workers' compensation commissioner for the third district awarding the plaintiff certain disability benefits, brought to the Compensation Review Board, which affirmed the commissioner's decision; thereafter, the defendant appealed to the Appellate Court, *Alvord, Moll* and *Cradle, Js.*, which reversed the board's decision and remanded the case with direction to reverse the commissioner's decision, and the plaintiff, on the granting of certification, appealed to this court. *Reversed*; *further proceedings*.

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

*James H. McColl, Jr.*, for the appellant (plaintiff).

*Cynthia W. Sheppard*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Joshua Perry*, solicitor general, for the appellee (defendant).

*Francis X. Drapeau* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Donna Civitello* filed a brief for the Connecticut Education Association et al. as amici curiae.

*Nathan J. Shafner* filed a brief for the Connecticut Counsel for Occupational Safety and Health as amicus curiae.

*Dana M. Hrelic* and *Meagan A. Cauda* filed a brief for the Connecticut Business and Industry Association et al. as amici curiae.

*Opinion*

ECKER, J. The sole issue in this certified appeal is whether an employee who sustained a compensable injury under the Workers' Compensation Act (act), General Statutes § 31-275 et seq., is eligible to receive total incapacity benefits pursuant to General Statutes § 31-307 (a) when the total incapacity occurred after the employee's voluntary retirement from the workforce. The Appellate Court held that an employee "who elected to retire from employment . . . and affirmatively conceded that he had no intention of returning to the workforce . . . was not entitled to [total incapacity] benefits pursuant to the [plain language of] the statute."[1] *Cochran* v. *Dept. of Transportation*, 220 Conn. App.

---

[1] Total incapacity benefits are commonly referred to as temporary total disability benefits, which is the term the Appellate Court used. See *Cochran* v. *Dept. of Transportation*, 220 Conn. App. 855, 868, 299 A.3d 1247 (2023); see also id., 870–71. For ease of reference and consistency with the statutory terminology, we refer to these benefits as total incapacity benefits.

855, 868, 299 A.3d 1247 (2023). We disagree and reverse the judgment of the Appellate Court.

The plaintiff, Stephen T. Cochran, began working for the defendant, the Department of Transportation, in 1967. In 1994, in the course of his employment for the defendant, the plaintiff sustained an injury to his lumbar spine while lifting a 300 to 400 pound tractor-trailer tire over a barrier on Interstate 84. The plaintiff timely filed an accident report and sought medical treatment for his injury, which necessitated two surgeries and years of pain management. In 1995, the defendant issued a voluntary agreement form accepting the 1994 workplace injury as compensable under the act and acknowledging that the plaintiff was entitled to a permanent partial disability award of 29.5 percent to the lumbar spine. The plaintiff continued to work for the defendant until 2003, when he accepted an incentivized early retirement benefits package. He was fifty-four years old and had no intention of returning to the workforce at the time of his retirement.

Following his retirement, the plaintiff's back condition deteriorated. He continued to obtain medical treatment, including another surgery in 2013, this one in New York. It is undisputed that the plaintiff did not seek authorization or notify the defendant prior to seeking treatment or undergoing the out-of-state surgery. In 2015, the plaintiff requested a workers' compensation hearing to modify his award, seeking, among other things, total incapacity benefits pursuant to § 31-307 (a) retroactive to his retirement in 2003. The workers' compensation commissioner for the third district (commissioner) held a series of five formal hearings in 2019 and 2020, at which both the plaintiff and his wife testified. The parties also introduced several exhibits into evidence, including evaluations, reports, and deposition testimony from medical providers.

Following these formal hearings, the commissioner found that, as of December 30, 2017, the plaintiff was totally incapacitated and unable to work as a result of his 1994 workplace injury and, therefore, that he was entitled to total incapacity benefits pursuant to § 31-307 (a) retroactive to that date. The commissioner also found that the plaintiff was entitled to total incapacity benefits for the three month period following his 2013 surgery because the medical testimony demonstrated that he was totally disabled during the surgical recovery period and that the surgery was related to his 1994 workplace injury. Although the commissioner awarded the plaintiff total incapacity benefits beginning on December 30, 2017, and included the three month period after his 2013 surgery in the award, the commissioner declined to award total incapacity benefits beginning on April 1, 2003, as the plaintiff had requested, finding that the plaintiff had not met his burden of demonstrating total incapacity going back to 2003.

The defendant appealed to the Compensation Review Board (board), claiming, among other things, that the "commissioner [had] misapplied the law when she ordered the payment of total [incapacity] benefits following unauthorized medical treatment from an out-of-network, out-of-state provider" and "when she ordered the payment of total [incapacity] benefits ad infinitum, despite the [plaintiff's] having taken a voluntary incentive retirement program in 2003 and not having suffered any loss of earning capacity." The board affirmed the commissioner's decision. The board concluded that "it was well within the [commissioner's] discretion to award" total incapacity benefits for the three months following the plaintiff's unauthorized surgery in 2013 because it could be reasonably inferred from the commissioner's decision that she had found the surgery to be "reasonable or necessary medical treatment." The board also concluded that the award of total incapacity

benefits was legally proper because (1) the plain and unambiguous language of § 31-307 (a) imposes no limitations on the ability of a retired claimant to collect total incapacity benefits, and (2) the record provided an adequate evidentiary basis for the commissioner's award of such benefits commencing on December 30, 2017.[2]

The defendant next appealed to the Appellate Court, raising two claims. First, the defendant argued that the board erred in affirming the commissioner's decision awarding total incapacity benefits under § 31-307 (a) beginning on December 30, 2017, because the statute does not permit total incapacity benefits for "voluntary retirees, like [the plaintiff], who have no wages to replace and whose departure from the workforce initially resulted from their own choice, not their disability." (Internal quotation marks omitted.) *Cochran* v. *Dept. of Transportation*, supra, 220 Conn. App. 865. Second, the defendant alternatively claimed that the board erred in affirming the commissioner's award of total incapacity benefits for the three month period following his 2013 surgery "because [such] [b]enefits are unavailable after unauthorized out-of-state treatment absent a . . . [commissioner's] determination that the treatment was reasonable, necessary, and unavailable in Connecticut . . . ." (Internal quotation marks omitted.) Id., 857 n.2. The Appellate Court agreed with the defendant's first claim and concluded that, under "the plain and unambiguous language of § 31-307 (a)," when an employee "elect[s] to take an incentivized early retirement benefits package and never intend[s] to reenter the workforce . . . it cannot be said that his injury *resulted* in his total incapacity to work." (Emphasis in original.) Id., 869. On this basis, the Appellate Court reversed the decision of the board without

---

[2] The defendant also raised additional claims of error not at issue in the present appeal.

reaching the defendant's second claim. See id., 873–74; see also id., 857 n.2, 863–64 n.8 and 873 n.10.

We granted the plaintiff's petition for certification to appeal, limited to the issue of whether the Appellate Court correctly determined that the plaintiff was not eligible for total incapacity benefits pursuant to § 31-307 (a). *Cochran* v. *Dept. of Transportation*, 348 Conn. 919, 303 A.3d 1193 (2023).

Whether a voluntary retiree is eligible to receive total incapacity benefits under § 31-307 (a) presents "an issue of statutory construction that has not [previously] been subjected to judicial scrutiny," and we therefore will apply plenary review to the administrative decision determining that the award of such benefits is authorized by statute. (Internal quotation marks omitted.) *Bergeson* v. *New London*, 269 Conn. 763, 769, 850 A.2d 184 (2004). Our analysis is guided by General Statutes § 1-2z, which instructs us to ascertain the meaning of a statute in the first instance from its text and relationship to other statutes. If we conclude that the meaning of the statute's text and its relationship to other statutes "is plain and unambiguous and does not yield absurd or unworkable results," we may not consider extratextual evidence of meaning. General Statutes § 1-2z.

Section 31-307 (a) provides in relevant part: "If any injury for which compensation is provided under the provisions of this chapter *results in total incapacity to work*, the injured employee shall be paid a weekly compensation equal to seventy-five per cent of the injured employee's average weekly earnings as of the date of the injury, calculated pursuant to section 31-310 . . . . [T]he compensation shall not continue longer than the period of total incapacity." (Emphasis added.) Both parties interpret the meaning of the term "shall" to require the mandatory provision of total incapacity benefits to eligible workers. The crux of their

disagreement lies in their conflicting interpretations of the terms "results in" and "total incapacity to work . . . ."

We construe statutory terms in accordance with General Statutes § 1-1 (a), which provides in relevant part that "words and phrases shall be construed according to the commonly approved usage of the language," whereas "technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." We also must be mindful that, "[i]n interpreting [statutory] language . . . we do not write on a clean slate, but are bound by our previous judicial interpretations of this language and the purpose of the statute." (Internal quotation marks omitted.) *Commissioner of Public Safety* v. *Freedom of Information Commission*, 312 Conn. 513, 527, 93 A.3d 1142 (2014).

Our inquiry begins with the phrase "results in." As used in the statute, this phrase operates to require a causal nexus between a claimant's original compensable injury ("any injury for which compensation is provided under the [act]") and the claimant's subsequent total incapacity to work. General Statutes § 31-307 (a). The plaintiff's construction relies on the assumption that the causation requirement encompasses incapacity to work caused by the original compensable workplace injury, regardless of whether the employee voluntarily removed himself from the workforce prior to total incapacitation. In the defendant's view, however, "[a]n employee's injury cannot [result] in total incapacity to work if he voluntarily and permanently retires and willingly chooses not to follow his customary calling or any other occupation." (Internal quotation marks omitted.) The defendant characterizes voluntary, permanent retirement as an independent cause of total incapacity, suggesting that a claimant's voluntary departure from the workforce disrupts the required causal nexus between

the original workplace injury and the subsequent total incapacity to work.

The term "result in" is a commonly used phrasal verb. Because it is not defined in § 31-307 (a) or the broader statutory scheme, we look to the dictionary to understand its ordinary meaning. See, e.g., *Seramonte Associates, LLC* v. *Hamden*, 345 Conn. 76, 84–85, 282 A.3d 1253 (2022). Unsurprisingly, the term means the same thing in our time as it did when it first appeared in the statute[3] in 1913: "[t]o be a physical, logical, or legal consequence," or "to proceed as an outcome or conclusion . . . ." Black's Law Dictionary (12th Ed. 2024) p. 1576; cf. 8 The Century Dictionary and Cyclopedia (Rev. & Enlarged Ed. 1911) p. 5117 (defining "result" as "[t]o proceed, spring, or rise as a consequence from facts, arguments, premises, combination of circumstances, etc.; be the outcome; be the final term in a connected series of events, operations, etc."). These definitions require a causal nexus between the two events or circumstances; a workplace injury "results in" the total incapacity to work if that injury is a cause of the claimant's incapacity to work. Cf. *Abrahams* v. *Young & Rubicam, Inc.*, 240 Conn. 300, 306, 692 A.2d 709 (1997) (holding that private cause of action provided in Connecticut Unfair Trade Practices Act, General Statutes § 42-110g (a), to "[a]ny person who suffers any ascertainable loss . . . as a result of the use or employment of a [prohibited] method, act or practice" means that prohibited conduct must be proximate cause of such loss (internal quotation marks omitted)). It follows that total incapacity benefits must be paid under § 31-307 (a) if the original workplace injury is a proximate cause of the claimant's total incapacity to work.

Our decision in *Laliberte* v. *United Security, Inc.*, 261 Conn. 181, 801 A.2d 783 (2002), is instructive in

[3] Public Acts 1913, c. 138, pt. B, § 11.

the present case because it addressed the causation requirement under § 31-307 (a). In *Laliberte*, we considered whether a claimant's incarceration disrupted the requisite causal nexus between his original workplace injury and his subsequent total incapacity, such that he had become ineligible for benefits under § 31-307 (a) because his continuing inability to work was "caused by his incarceration" rather than by his workplace injury. Id., 184. Looking to the language of § 31-307 (a), we found no exclusion for benefits for incarcerated recipients. Id., 186. The sole eligibility criterion in the statute was that the compensable injury resulted in total incapacity to work. Id. We reasoned that "[t]he fact that a claimant is unemployable for reasons other than his injury is not dispositive. The issue is whether a claimant has suffered some loss of earning capacity as a direct result of his work-related injury." (Internal quotation marks omitted.) Id. 188–89. Noting that the claimant "ha[d] been found to be, and remain[ed], totally incapable of working due to his disability," we concluded that he remained entitled to total incapacity benefits under § 31-307 (a). Id., 186. It was "his disability, and not his imprisonment, that preclude[d] him from working." Id., 184.

In arriving at our conclusion in *Laliberte*, we highlighted that the act was "an intricate and comprehensive statutory scheme" and that "it is not the court's role to acknowledge an exclusion when the legislature painstakingly has created such a complete statute." Id., 187. Whether total incapacity benefits should be discontinued for incarcerated claimants is a matter of policy "for the legislature to decide, not the courts." Id., 188. "If the legislature had intended to discontinue total disability benefits for those who are incarcerated, it easily could have done so." Id., 187. There is no such exclusion in the statutory scheme, and we would not create one by judicial fiat.

The defendant maintains that *Laliberte* is distinguishable because the claimant's compensable injury in that case was "the initial cause of his separation from the workforce" and because "he continue[d] to want to work" while incarcerated. This argument fails because it finds no support in the ratio decidendi of *Laliberte*. We said nothing there about the claimant's desire or willingness to work. Nor did our holding hinge on whether the claimant's injury was the initial reason for his separation from the workforce. We made no mention of when the claimant left the workforce or for what reason. See id., 184. Our holding instead was based on the absence of any indication in the statutory text or legislative history that "the legislature intended to permit the discontinuance of total [incapacity] benefits for totally disabled recipients who are also unable to work as a result of incarceration." Id., 186. This reasoning applies with equal force to the initiation of benefits following a claimant's voluntary retirement. The statute does not require a causal nexus between the injury and the claimant's actual employment status; it requires only that the injury cause an incapacity to work. In the same way that the claimant in *Laliberte*, regardless of his incarceration status, had sustained a work-related injury that resulted in his incapacity to work, so, too, did the claimant in the present case, regardless of his retirement status, sustain an injury that resulted in his incapacity to work. The statute as written entitles all medically qualified claimants to receive total incapacity benefits, with no exception for those claimants who may also be voluntarily retired.

This understanding also disposes of the argument, contained in the decision of the Appellate Court, that *Laliberte* is distinguishable because it involved the discontinuance rather than the initiation of total incapacity benefits. See *Cochran* v. *Dept. of Transportation*, supra, 220 Conn. App. 872–73 (this court's "repeated use of

the phrase 'discontinuance of benefits' in *Laliberte* summarizes the distinction between the claimant in that case and the plaintiff in the present case"). We used the term "discontinuance of benefits" in *Laliberte* because it accurately described the procedural posture of the claimant's workers' compensation case. See *Laliberte* v. *United Security, Inc.*, supra, 261 Conn. 186. Nothing in that opinion suggests that the result would have been different had the claimant been incarcerated immediately after sustaining his compensable workplace injury and sought total incapacity benefits for the first time while incarcerated. As the amici curiae the Connecticut Education Association and the Connecticut Alliance for Retired Americans point out, the standard of proof for establishing initial entitlement to total incapacity benefits is the same as the standard for maintaining the entitlement when discontinuance is sought. See *Dengler* v. *Special Attention Health Services, Inc.*, 62 Conn. App. 440, 454, 774 A.2d 992 (2001) ("total incapacity becomes a matter of continuing proof for the period claimed" (internal quotation marks omitted)); *Cummings* v. *Twin Tool Mfg. Co.*, 40 Conn. App. 36, 42, 668 A.2d 1346 (1996) (same). Likewise, our analysis of what a claimant must show to demonstrate initial eligibility for benefits is identical to what a claimant must show to demonstrate continuing eligibility for benefits. In both cases, the causal nexus is not disrupted by intervening circumstances, so long as the total incapacity results from the original compensable injury.

The legislature's use of the phrase "total incapacity to work," the other critical statutory language used to describe the condition triggering entitlement to benefits under § 31-307 (a), reinforces our conclusion that the plaintiff's voluntary retirement did not impair his right to receive those benefits. Although its definition does not appear in the statutory scheme, this court previously has defined the phrase "total incapacity to work"

in considering § 31-307 (a) benefits. The plaintiff cites to *Osterlund* v. *State*, 135 Conn. 498, 66 A.2d 363 (1949), in which we defined total incapacity to work as "not the employee's inability to work at his customary calling, but *the destruction of his capacity to earn* in that or any other occupation [that] he can reasonably pursue." (Emphasis added.) Id., 505; accord *Clark* v. *Henry & Wright Mfg. Co.*, 136 Conn. 514, 516, 72 A.2d 489 (1950); see *Ferrara* v. *Clifton Wright Hat Co.*, 125 Conn. 140, 142–43, 3 A.2d 842 (1939) (defining total incapacity to work as "[the] destruction or impairment of earning capacity"); see also *Esposito* v. *Stamford*, 350 Conn. 209, 217, 323 A.3d 1066 (2024) ("[s]pecial benefits, such as temporary, total incapacity benefits, continue only as long as there is an impairment of wage earning power" (internal quotation marks omitted)). Our cases have similarly defined total incapacity to work as "the inability of the employee, because of his injuries, to work at his customary calling or at any other occupation [that] he might reasonably follow." *Czeplicki* v. *Fafnir Bearing Co.*, 137 Conn. 454, 456, 78 A.2d 339 (1951); accord *Hart* v. *Federal Express Corp.*, 321 Conn. 1, 26, 135 A.3d 38 (2016); *Rayhall* v. *Akim Co.*, 263 Conn. 328, 350, 819 A.2d 803 (2003).

The defendant asserts that "the statutory 'incapacity' to work hinges on willingness to work" and asks us to construe § 31-307 (a) to require that a claimant must be unable, yet ready and willing, to work to establish eligibility for total incapacity benefits. In our view, the statutory text cannot fairly be read to contain such a requirement. The language of the statute focuses specifically and exclusively on the effect of the injury on the claimant's *capacity* to work. The term incapacity in this context means the claimant's *inability* to work,[4] not

---

[4] The dictionary definition of incapacity is "the quality or state of being incapable: inability, incapability . . . ." Webster's Third New International Dictionary (2002) p. 1141. This mirrors the dictionary definition of incapacity when the statute was first enacted in 1913: "[l]ack of capacity; lack of ability or qualification; inability; incapability; incompetency." 5 The Century

his willingness to work. See, e.g., *Czeplicki* v. *Fafnir Bearing Co.*, supra, 137 Conn. 456. If the legislature had intended instead to require the injury to result in the claimant's actual departure from the workforce, it could and would easily have so stated by providing that the benefits are available if the injury results in the claimant's loss of employment or involuntary separation from the workforce, or words to that effect. See, e.g., *Costanzo* v. *Plainfield*, 344 Conn. 86, 108, 277 A.3d 772 (2022) ("[i]t is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so" (internal quotation marks omitted)).

We need not speculate about whether the legislature, without saying so, nonetheless intended to require willingness to work as a precondition for total incapacity benefits under § 31-307 (a), because the statutory scheme demonstrates that the legislature knows exactly how to impose such a requirement when it desires to do so: a proviso requiring willingness to work was included as a condition to receive partial incapacity benefits under General Statutes § 31-308 (a).[5] By including this require-

Dictionary and Cyclopedia (Rev. & Enlarged Ed. 1911) p. 3031. There is nothing in the dictionary definition suggesting that the word includes a volitional aspect, i.e., the incapacitated person's willingness to perform the undertaking.

[5] General Statutes § 31-308 (a) provides in relevant part: "If any injury for which compensation is provided under the provisions of this chapter results in partial incapacity, the injured employee shall be paid a weekly compensation equal to seventy-five per cent of the difference between the wages currently earned by an employee in a position comparable to the position held by the injured employee before his injury . . . except that when (1) the physician, physician assistant or advanced practice registered nurse attending an injured employee certifies that the employee is unable to perform his usual work but is able to perform other work, (2) *the employee is ready and willing to perform other work in the same locality* and (3) no other work is available, the employee shall be paid his full weekly compensation subject to the provisions of this section. . . ." (Emphasis added.)

ment in § 31-308 (a) but not in § 31-307 (a), the legislature left no doubt that the arrangement is deliberate. We are not at liberty to reach a contrary conclusion. See, e.g., *PPC Realty, LLC* v. *Hartford*, 350 Conn. 347, 358, 324 A.3d 780 (2024) (holding that statutory provision expressly permitting affirmative defense in one specific context demonstrated that the legislature did not intend to permit defense when it was not included in context controlled by different but closely related statute in same statutory scheme). "To agree with the [argument that the missing term should be supplied by construction], we would have to graft language onto [the statute] that does not exist, which we decline to do." Id.

Equally unavailing is the defendant's argument that our precedent has already incorporated a willingness to work requirement into § 31-307 (a). The cases it relies on—*Clark* v. *Henry & Wright Mfg. Co.*, supra, 136 Conn. 516–17, *Osterlund* v. *State*, supra, 135 Conn. 505–506, *Ferrara* v. *Clifton Wright Hat Co.*, supra, 125 Conn.142–43, and *Reilley* v. *Carroll*, 110 Conn. 282, 285–86, 147 A. 818 (1929)—do not impose any such requirement.[6] The defendant misconstrues those cases by overlooking the distinction between *statutory* requirements and the different *evidentiary* options available to a claimant to meet those requirements. Each of the cases relied on by the defendant addressed factual scenarios in which the claimants were medically able to work but were nonetheless rendered unemployable by their injuries.[7]

---

[6] The defendant also cites to *Hansen* v. *Gordon*, 221 Conn. 29, 39–41, 602 A.2d 560 (1992), in support of its claim that employees are eligible for total incapacity benefits only if their injury "involuntarily separates them from the workforce." *Hansen* is inapposite because it did not involve § 31-307 (a) benefits but, rather, the availability of partial incapacity benefits under § 31-308 (a).

[7] There are various reasons that an injured claimant who is medically able to work may nonetheless be rendered unemployable due to their injuries. In older cases, the reason was often the stigma associated with a claimant's disability. Our more recent jurisprudence assesses whether "a claimant is realistically employable" based on a holistic "analysis of the effects of the

See, e.g., *Osterlund* v. *State*, supra, 506–507 ("[i]f, *though* [*the claimant*] *can do such work*, his physical condition due to his injury is such that he cannot in the exercise of reasonable diligence find an employer who will employ him, he is just as much totally incapacitated as though he could not work at all" (emphasis added)). The claimants in those cases provided evidence of unemployability in the form of fruitless job searches. This court then determined whether the commissioner's findings of total incapacity were permissible based on the factual record. However, evidence of willingness to work has never been required to establish eligibility for total incapacity benefits. See, e.g. *Ferrara* v. *Clifton Wright Hat Co.*, supra, 143 ("[although an] inability to obtain work by the exercise of due diligence is evidential it is not so conclusive as to require a finding of incapacity"). Rather, "[t]he evidence must be such as to show that inability to obtain work and earn wages, or diminished earning capacity, exists not by reason of any change in market conditions, but because of a defect [that] is personal to [the worker] and [that] is the direct result of the injury that [the worker] has sustained." (Internal quotation marks omitted.) Id. In other words, as we have established in the foregoing analysis, the evidence must show that the claimant is unable to work as a result of their work-related injury. When a claimant is not medically incapacitated but is nonetheless rendered unemployable by their injury, various forms of evidence will often suffice, such as "nonphysician vocational rehabilitation expert or medical testimony that [the claimant] is unemployable . . . ." (Internal quotation marks omitted.) *Mikucka* v. *St. Lucian's Residence, Inc.*, 183 Conn. App. 147, 160, 191 A.3d 1083 (2018). In short, the

---

compensable injury [on] the claimant, in combination with [their] preexisting talents, deficiencies, education and intelligence levels, vocational background, age, and any other factors [that] might prove relevant." (Internal quotation marks omitted.) *Mikucka* v. *St. Lucian's Residence, Inc.*, 183 Conn. App. 147, 160, 191 A.3d 1083 (2018).

defendant mistakenly construes one way to provide evidence of total incapacity as a generalized statutory requirement for establishing total incapacity. We reaffirm that there is no requirement under § 31-307 (a) that a claimant demonstrate a willingness to work, or an attempt to find a job, in order to obtain total incapacity benefits. In many cases, including the present case, such a requirement would be nonsensical: even if the plaintiff were willing to work, the record in this case establishes that he is unemployable.[8]

Our analysis is not complete without addressing the relationship between § 31-307 (a) and related statutes. First and foremost, as we observed previously in this opinion, the criteria for total incapacity benefits under § 31-307 (a) stand in stark contrast to the conditions required to obtain benefits under § 31-308 (a). The former statute contains no qualifications or conditions to eligibility for total incapacity benefits, outside of the sole criterion that the claimant's total incapacity be a "result" of their compensable injury. Section 31-308 (a), by contrast, requires that a partially incapacitated claimant

---

[8] In concluding that the plaintiff was unemployable as of December 30, 2017, the commissioner reviewed medical evidence, vocational reports, and testimony. She was fully persuaded by the testimony of Phillip S. Dickey, a neurosurgeon, who attested that the plaintiff's 1994 workplace injury was a "substantial contributing factor" to his disability and that he had "the lightest of work capacities." (Internal quotation marks omitted.) She was also persuaded by the expert testimony of Albert J. Sabella, a vocational rehabilitation counselor, who attested that the plaintiff "lies down periodically during the day to help reduce and relieve exacerbations of severe pain. He reports much difficulty bending and lifting any weight from the floor level. From table height he rates his capacity [as fifteen] maybe [twenty] pounds; however, not repetitively and he can't carry any weight because of his use of [a] cane and [his] balance issues." (Internal quotation marks omitted.) The board agreed that "the evidentiary record in this matter provided an adequate basis" for the commissioner's findings, noting the statement in Sabella's report that "the combined and compounded effect of [the plaintiff's] employment barriers manifest to an extent that renders him unemployable for any practical vocational purpose." (Internal quotation marks omitted.)

either be earning a wage, or be "ready and willing to perform other work in the same locality" to establish eligibility for benefits. The defendant argues that this discrepancy is "an irrelevant distinction in the statutory language" but fails to provide any reason that would explain the difference between the statutes other than the most obvious one, which is that a claimant seeking total incapacity benefits need not show that he is ready and willing to work. "We presume that the legislature had a purpose for each sentence, clause or phrase in a legislative enactment, and that it did not intend to enact meaningless provisions." (Internal quotation marks omitted.) *Hall* v. *Gilbert & Bennett Mfg. Co.*, 241 Conn. 282, 303, 695 A.2d 1051 (1997).

General Statutes § 31-310, the act's wage calculation provision, provides further support for our construction of § 31-307 (a). The wage calculation formula for injured workers includes a provision that applies "[w]hen the period of employment immediately preceding the injury is computed to be less than a net period of two calendar weeks  . . . ."[9] General Statutes § 31-310 (a). This formula applies to workers whose incapacity occurs after retirement. See *Green* v. *General Dynamics Corp.*, 245 Conn. 66, 75, 712 A.2d 938 (1998) ("[w]hen an employee is retired and unemployed at [the time of injury], the 'employment previous to injury' is necessarily less than two weeks and the contemporaneous prevailing weekly wage is considered the employee's weekly wage").[10] It

---

[9] For purposes of wage calculation, "the date of injury" in § 31-310 is construed to mean the date of incapacity. *Mulligan* v. *F. S. Electric*, 231 Conn. 529, 544–45, 651 A.2d 254 (1994).

[10] Similarly, General Statutes § 31-310c provides a wage calculation formula for occupational diseases that manifest "at a time when the worker has not worked during the twenty-six weeks immediately preceding the diagnosis of such disease  . . . ." This statute likewise applies to workers who are retired at the time the disease manifests. See *Green* v. *General Dynamics Corp.*, supra, 245 Conn. 79 (holding that, under § 31-310c, worker's complete retirement at time of incapacity did not bar award of weekly death benefits to his spouse for permanent loss of earning capacity).

would make no sense for the legislature to enact a wage calculation formula for benefits that do not exist. The enactment of a wage calculation formula that contemplates benefits being paid to workers whose incapacity occurs after retirement indirectly supports our conclusion that total incapacity benefits are available to that category of claimants under § 31-307 (a).

The causation requirement in General Statutes § 7-433c, governing eligibility for heart and hypertension benefits, is also instructive. Section 7-433c provides in relevant part that, if a uniformed and paid municipal police officer or firefighter "suffers . . . any condition or impairment of health caused by hypertension or heart disease *resulting in* his death or his temporary or permanent, total or partial disability," he is entitled to workers' compensation benefits. (Emphasis added.) Heart and hypertension benefits under § 7-433c are administered under the act. See *Bergeson* v. *New London*, supra, 269 Conn. 778 (recognizing that "the type and amount of benefits available pursuant to § 7-433c are the same as those under the [act]," which is "a procedural avenue for administration of the benefits under § 7-433c" (emphasis omitted; internal quotation marks omitted)). In a recent case, *Coughlin* v. *Stamford Fire Dept.*, 334 Conn. 857, 224 A.3d 1161 (2020), we held that a firefighter who was not diagnosed with coronary artery disease until after he had retired from employment was nonetheless eligible for heart and hypertension benefits. See id., 866–67, 869. We reasoned that "a claimant may pursue claims for subsequent, related [heart and hypertension] injuries, regardless of whether he or she is still employed . . . . To conclude . . . that heart disease claims occurring after retirement are not compensable, even if such claims flow from a primary compensable claim—would run afoul of the clear legislative intent underlying § 7-433c."[11] (Citations omitted.) Id.,

[11] As we recognized in *Coughlin*, "§ 7-433c was intended to eliminate two of the basic requirements for coverage under [the act], namely the causal

866–67. Although the legislative intent of § 7-433c is beyond the scope of our threshold § 1-2z analysis, we find it persuasive that such a closely related statute mirroring the language in § 31-307 (a) permits the receipt of benefits by workers whose incapacity occurs after voluntary retirement.

Notwithstanding this textual evidence, the Appellate Court held, and the defendant maintains, that awarding total incapacity benefits to workers when their total incapacity occurs after their voluntary retirement would frustrate the purpose of the statute as expressed in our prior case law. See *Cochran* v. *Dept. of Transportation*, supra, 220 Conn. App. 870. The Appellate Court construes our precedent to mean that the purpose of § 31-307 (a) is to compensate for a worker's "wage loss" and that awarding such benefits to a claimant who has voluntarily retired with no intention of returning to the workforce "would not effectuate the statutory purpose" because such a claimant would not have any lost wages to replace. (Internal quotation marks omitted.) Id. The defendant cites to two cases in support of this reading of our precedent: *Rayhall* v. *Akim Co.*, supra, 263 Conn. 328, and *Pizzuto* v. *Commissioner of Mental Retardation*, 283 Conn. 257, 927 A.2d 811 (2007). See *Cochran* v. *Dept. of Transportation*, supra, 870 (relying on and quoting *Pizzuto*).

The flaw in this argument is that it does not take into account that our precedent recognizes two purposes served by total incapacity benefits. As the Appellate Court points out, the benefits function to replace lost

---

connection between hypertension and heart disease and the employment, and the requirement that the illness was suffered during the course of employment. . . . More specifically, the legislature's intent was to afford the named occupations with a bonus by way of a rebuttable presumption of compensability when, under the appropriate conditions, the employee suffered heart disease or hypertension." (Citation omitted; internal quotation marks omitted.) *Coughlin* v. *Stamford Fire Dept.*, supra, 334 Conn. 864.

wages that the claimant is unable to earn as the result of the incapacitating effects of the work-related injury. See id. However, our precedent has also characterized the purpose of total incapacity benefits as compensation for the loss of earning power or capacity. See *Esposito* v. *Stamford*, supra, 350 Conn. 218 (categorizing total and partial incapacity benefits as compensation for "the loss of earning capacity"); *Churchville* v. *Bruce R. Daly Mechanical Contractor*, 299 Conn. 185, 192, 8 A.3d 507 (2010) ("[c]ompensation for loss of earning power takes the form of partial or total incapacity benefits" (internal quotation marks omitted)); *Marandino* v. *Prometheus Pharmacy*, 294 Conn. 564, 577, 986 A.2d 1023 (2010) (total and partial incapacity benefits are "designed to compensate for loss of earning capacity"); *Mulligan* v. *F. S. Electric*, 231 Conn. 529, 541, 651 A.2d 254 (1994) ("[c]ompensation under [the] [a]ct is based [on] incapacity, total or partial, and hence is based [on] loss of earning power" (internal quotation marks omitted)); *Rousu* v. *Collins Co.*, 114 Conn. 24, 31, 157 A. 264 (1931) ("[c]ompensation under [the] [a]ct is based [on] incapacity, total or partial, and hence is based [on] loss of earning power" (internal quotation marks omitted)); *Reilley* v. *Carroll*, supra, 110 Conn. 285 ("[t]he object of our statute was to give compensation for a total or partial loss of the capacity to earn wages" (internal quotation marks omitted)). Indeed, *Rayhall* itself uses this formulation in a different part of the opinion. See *Rayhall* v. *Akim Co.*, supra, 263 Conn. 349 ("[c]ompensation for *loss of earning power* takes the form of partial or total incapacity benefits" (emphasis added)). Awarding total incapacity benefits to a claimant who becomes incapacitated after retirement, and who therefore cannot earn a living should they need or desire to return to the workforce, serves the purpose of compensating for loss of earning power.

Our precedent does not prioritize one of these purposes over the other but, rather, demonstrates that total

incapacity benefits under § 31-307 (a) serve a dual purpose: to compensate for both wage loss and loss of earning power. See, e.g., *Czeplicki* v. *Fafnir Bearing Co.*, supra, 137 Conn. 456 ("[o]ne purpose of the statute is to give compensation for loss of earning power" (emphasis added)). In most cases, these losses are coextensive. But, when the dual purposes do not align, we defer to the purpose that accomplishes the broader "humanitarian and remedial purposes of the act . . . ." (Internal quotation marks omitted.) *Gould* v. *Stamford*, 331 Conn. 289, 304, 203 A.3d 525 (2019). When a claimant's total incapacity occurs after their voluntary retirement, total incapacity benefits under § 31-307 (a) accomplish the purpose of compensating the claimant for their loss of earning power.

In light of the foregoing, we conclude that, under the plain and unambiguous language of § 31-307 (a), a worker who has sustained a compensable workplace injury under the act is eligible to receive total incapacity benefits when the total incapacity occurs after their voluntary retirement from the workforce. The text of the statute does not contain any exclusions for a worker whose incapacity occurs after retirement, and no such limitation is fairly implied by its context or other relevant components of the act. As we noted previously in this opinion, the text of § 31-307 (a) could have been drafted to entitle a claimant to benefits for a work-related injury resulting in an actual wage loss, or to require the claimant seeking such benefits to be ready and willing to work but for the injury (as § 31-308 (a) requires). But it was not. Instead, the statute, in plain and unambiguous terms, provides that the claimant is entitled to benefits for a work-related injury resulting in their *incapacity* to work. In this regard, the statute is not "susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Gonzalez* v. *O & G Industries, Inc.*, 322 Conn. 291, 303, 140

A.3d 950 (2016). The defendant makes no argument that our construction of the statute, permitting eligibility for total incapacity benefits when the incapacity occurs after retirement, is absurd or unworkable. Thus, pursuant to § 1-2z, having assessed the plain meaning of the text and its relationship to other statutes, we come to the end of our analysis.[12] "It is not the role of this court to engraft additional requirements onto clear statutory language." (Internal quotation marks omitted.) *Reserve Realty, LLC* v. *Windemere Reserve, LLC*, 346 Conn. 391, 410, 291 A.3d 64 (2023); see, e.g., *Hasychak v. Zoning Board of Appeals*, 296 Conn. 434, 441–42 n.8, 994 A.2d 1270 (2010).

We acknowledge the concerns expressed by the defendant that employers and their insurers may incur increased and more unpredictable costs if they are required to pay total incapacity benefits to claimants whose eligibility arises after retirement, and that benefits for lost earning capacity paid to retirees may be considered a windfall from one perspective. To the extent that these concerns are compelling, however, they emanate from the statute as written, and their amelioration lies in the hands of the legislature. "The

---

[12] We decline the invitation to look to the precedent of other states, as the defendant urges, or to the interpretations of the federal Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. (2018), by the United States Court of Appeals for the Fourth and Ninth Circuits, as amicus curiae the Connecticut Counsel for Occupational Safety and Health urges. Even if it were proper for us to consider these materials under § 1-2z when the meaning of the statute is plain and unambiguous, they are of dubious value in the present context because legislation regulating workers' compensation systems typically involves a complex, multivariable, interrelated scheme of policy choices that differ from jurisdiction to jurisdiction. See, e.g., *Pokorny* v. *Getta's Garage*, 219 Conn. 439, 460–61 n.15, 594 A.2d 446 (1991) (noting that precedent of other states is often of "limited assistance, because the courts are construing the terms of their own [workers' compensation acts] which generally differ materially from our [a]ct" (internal quotation marks omitted)). The conclusion we reach in this case is based on the plain meaning of § 31-307 (a).

complex nature of the [act] requires that policy determinations should be left to the legislature, not the judiciary." (Internal quotation marks omitted.) *McCullough* v. *Swan Engraving, Inc.*, 320 Conn. 299, 310, 130 A.3d 231 (2016). In this regard, we observe that the legislature, by existing legislation, appears to have considered and regulated the interplay between and among various sources of government benefits available to retirees, including workers' compensation benefits, and has affirmatively limited the benefits available to the plaintiff and similarly situated, retired workers.[13]

In summary, we agree with the board that § 31-307 (a) "imposes no constraints on a claimant's ability to collect temporary total disability benefits due to age or retirement status" and hold that a claimant who sustains a compensable injury under the act is eligible to receive

[13] Disability retirement payments under the State Employees Retirement Act, General Statutes § 5-152 et seq., the Municipal Employees Retirement System, General Statutes § 7-425 et seq., and the Teachers' Retirement System, General Statutes § 10-183b et seq., are reduced by the amount of workers' compensation benefits, including total incapacity benefits. See General Statutes §§ 5-169 (g) (1) through (3) and 5-170 (b) and (c) (state employees); General Statutes § 7-436 (d) (municipal employees); General Statutes § 10-183bb (b) and (c) (public school teachers). Additionally, in 1993, the General Assembly enacted legislation reducing total incapacity benefits to retirees also receiving old age benefits under the federal Social Security Act. See Public Acts 1993, 93-228, § 16, codified at General Statutes (Rev. to 1995) § 31-307 (e). Although the legislature repealed this provision in 2006, both parties agree that it continues to apply to workers, including the plaintiff, who were injured prior to the date of repeal. See Public Acts 2006, No. 06-84, § 1. Finally, the statutory scheme provides a mechanism to discontinue benefits to individuals who are no longer eligible under General Statutes § 31-315. As the amici curiae the Connecticut Education Association and the Connecticut Alliance for Retired Americans highlight, this provision demonstrates that total incapacity benefits are not awarded "ad infinitum." All injured workers—including retirees—maintain the burden of proving eligibility throughout the life of their claim. See *Reilley* v. *Carroll*, supra, 110 Conn. 287 ("[i]t is at all times within the power of the defendant-employer, or his insurer, to terminate the period of total incapacity and end or reduce liability for compensation . . . under the express limitation of the award until it [is] shown that . . . [the plaintiff's] incapacity has diminished or ceased" (internal quotation marks omitted)).

total incapacity benefits regardless of whether their total incapacity occurs before or after their voluntary retirement.

The only remaining issue is the defendant's alternative claim that the board erred in affirming the commissioner's award of § 31-307 (a) benefits for the three month period following the plaintiff's 2013 surgery in the absence of a determination that the treatment was reasonable, necessary, and available in Connecticut. The Appellate Court did not reach the defendant's alternative claim, and the parties have not briefed or argued the issue before this court in the present certified appeal. See *Cochran* v. *Dept. of Transportation*, supra, 220 Conn. App. 857 n.2. We therefore reverse the judgment of the Appellate Court and remand the case to that court for consideration of that issue.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to consider the defendant's remaining claim on appeal.

In this opinion the other justices concurred.